PEOPLE EX REL. SEELEY V. HALL, TREASURER, ETC.
PEOPLE EX REL. SEELEY V. MAY, TREASURER, ETC.

1. So much of a legislative act as is not referred to in the title or germane to the subject therein mentioned is void. But if the part of the statute remaining, which is covered by the title, is complete in and of itself, and does not depend on the void portion, it may stand.

2. The provision of the federal constitution prohibiting the several states from passing laws impairing the obligations of contracts includes contracts between municipal corporations and private persons.

3. A county warrant issued upon a valid county indebtedness is a contract, and the provision of the general statute under which such warrant is issued, making the same receivable for taxes, is a part of the obligation of the contract.

4. A county warrant issued in payment of services as a witness in a criminal case does not differ in this respect from other county warrants.

5. A provision contained in a statute adopted by one legislature may, when accepted and acted upon by a private citizen or corporation, result in a contract which succeeding legislatures are powerless to repudiate.

6. County warrants are assignable, but they do not possess all the attributes of negotiable paper; they are liable in the hands of all persons to every defense which the county might have interposed in an action brought by the original payee.

7. The statute providing for the receipt of county warrants for taxes is not in conflict with section 7, article 10, section 38, article 5, or section 11, article 2, of the state constitution.

THESE were actions for an injunction and *mandamus*, respectively, brought in this court upon the following statute:

"AN ACT to provide for the payment of county and road taxes in cash, and to repeal all laws in conflict therewith.

"Be it enacted by the general assembly of the state of Colorado:

"SECTION 1. All property taxes levied for county purposes and for road purposes, together with all penalties and costs thereon, shall be payable in cash only; *provided*, whenever the market value of such warrants shall be less than their par value, it shall be the duty of the county treasurer of the county to credit the cash so received to a special fund, which fund shall be used for the purpose of buying any such outstanding county or road warrants, respectively, at the lowest price, not exceeding par, at which the same or any part thereof may be offered to the county treasurer;

"*Provided further*, The county commissioners may, by resolution, set aside not to exceed twenty-five per cent. of the money so collected for the purpose of creating a special contingent fund;

"*Provided further*, That said fund shall not be used for the payment of any outstanding warrants, or for payment of any salaries or fees of officers, or for any purpose whatever, except in payment of purchases of supplies for county purposes hereafter made.

"*And provided further*, Whenever there shall be in the hands of the county treasurer, on the first day of any month, any cash to the credit of such special fund to an amount not less than $200, it shall be his duty to advertise, for the period of one week, in some newspaper of general circulation in such county, the amount to the credit of such fund, and that the same will be used for the redemption of warrants at their lowest market value, and that any person holding any county or road war-

rants of such county and wishing to dispose of the same before the regular time of their redemption may send to the county clerk of such county a sealed bid, giving the numbers, amount and price at which he is willing to dispose of such warrants, or any part thereof.

"SEC. 2.   At the next meeting thereafter of the board of county commissioners they shall proceed to open all such bids, and to authorize the county treasurer to invest said special fund in the warrants or a part thereof so offered at the lowest price or prices at which the same have been offered; thereupon the county treasurer shall proceed to so invest said fund and cancel all warrants thus coming into the county treasury the same as though they were otherwise paid and canceled, and he shall keep a complete record thereof.

"SEC. 3.   Sections numbered 637 and 2884 of the General Statutes, the same being respectively sections 533 and 2289 of the general laws of the state of Colorado, in so far as the same are in conflict with the provisions of this act, and all other acts and parts of acts inconsistent with this act, are hereby repealed."

Messrs. TELLER and ORAHOOD and Messrs. MARKHAM and DILLON, for relators.

Mr. DANIEL E. PARKS, county attorney, and Mr. H. B. JOHNSON, for May, and Hall, *pro se.*

HELM, J.   These causes are both against county treasurers.   The former is instituted for the purpose of enjoining the doing of certain acts threatened by the treasurer of Summit county; the latter is a proceeding to compel the performance of a certain act by the treasurer of Lake county.   Both arise under the same statute, and will be disposed of in a single opinion.   This statute is an act of the fifth general assembly on the subject of revenue: Sess. Laws 1885, p. 315.   We are to consider the cases as upon a general demurrer to the complaint and petition;

respectively; in the latter the demurrer also challenging the sufficiency of the alternative writ. The code (section 342) seems to provide for respondents' raising questions of law in *mandamus* proceedings by answer instead of demurrer. But as no objection is here interposed, we shall not find fault with the method pursued. It is in harmony with the practice prevailing in other civil actions.

Two questions are fairly presented for adjudication: *First,* is that part of the act including the *provisos* of section 1 and all of section 2 void because inimical to the constitution? and, *second,* can the remainder thereof be construed as prohibiting the receipt, for taxes, of county warrants issued prior to July 6, 1885, when the act became a law?

I. The specific objection to which our attention is directed under the first question above stated is that the portion of the act designated therein relates to a subject in no way mentioned or covered by the title, and therefore that it is in conflict with section 21, article 5, of the constitution. Other exceptions are taken to the provisions in question; but inasmuch as we deem this one decisive, they will not be discussed. The title of the act is as follows: "An act to provide for the payment of county and road taxes in cash, and to repeal all laws in conflict therewith." The first three lines of section 1 declare that "all property taxes levied for county purposes and for road purposes, together with all penalties and costs thereon, shall be payable in cash only." The third and last section specifically repeals two existing provisions which authorized the payment of such taxes in county warrants, and then concludes with the usual general clause repealing inconsistent acts and parts of acts.

The foregoing are the only portions of the statute which can possibly be considered as covered by the title. The remainder thereof treats of subjects wholly disconnected from that of the payment of county and road taxes in

cash. No learning or ingenuity can frame an argument which will satisfactorily demonstrate that clauses providing for the *disbursement* of funds in the treasury are embraced within a title which is expressly confined to the *collection* of such funds. It requires no reasoning to show that provisions relating to the purchase of outstanding warrants at their market value, setting aside for a special purpose twenty-five per cent. of funds in the treasury, advertising for sealed propositions of sale from the holders of warrants, canvassing such bids by the county commissioner, and the like, are not germane to the subject mentioned. This conclusion, however, does not necessarily render void the portion of section 1 above quoted. It and the repealing clauses are clearly, as already observed, within the purpose expressed in the title. They do not in any way depend upon the other parts of the act, and are complete in and of themselves. In view of the latter part of the constitutional provision referred to, as well as under a familiar rule of statutory construction, it is our duty to hold that, while all the *provisos* of section 1 and all of section 2 are void, the remainder of the act is perfectly valid, so far as the foregoing objection is concerned.

II. The second question presented is not so easily answered. Prior to the adoption of the act under consideration it was provided by statute that county warrants should be receivable by the treasurer for ordinary county taxes; and it is contended that the provision requiring all property taxes levied for county purposes to be paid in cash only, cannot be construed as inhibiting the payment of such taxes with orders or warrants issued prior to the taking effect of the act. Counsel for petitioner argue that the statute making such warrants a legal tender for county taxes became a part of the contract represented by them; and that a construction of the act of 1885 which would take from them this quality or attribute would, in effect, impair the obligation of the con-

tract, and therefore be within a familiar inhibition of both the federal and state constitutions. To meet this objection, counsel for respondent present and ably argue three propositions. They contend: *First*, that the framers of the federal constitution, in prohibiting the passage by a state of laws impairing the obligation of contracts, referred only to agreements existing between individuals; that it is error to extend such constitutional provision to contracts between municipal corporations and private parties; *second*, they insist that there is in this case no contract to be impaired; and *third*, they assert that the statutes authorizing county orders or warrants to be used in payment of taxes were themselves in conflict with plain declarations of our state constitution, and therefore void.

*First.* The legality, as well as the propriety, of applying the constitutional provision in question to contracts between a municipal corporation and a private party are not undisputed. There are distinguished jurists and eminent essayists who think, with counsel for respondent, that only contracts between private individuals were intended by the framers of that instrument to be reached by this inhibition. But the supreme court of the United States, in a long line of decisions, have adhered, though not unanimously, to the contrary doctrine, which was first announced in the *Dartmouth College Case,* 4 Wheat. 518. These decisions may, perhaps, be founded upon a mistaken view concerning the intent of the constitution makers, and the principle announced in them may possibly entail pernicious consequences. But, until that august tribunal shall have retraced its footsteps, the conclusion in question will be accepted by us. We shall assume, then, as correct the proposition that legislation impairing the obligation of a contract between the people, acting in a municipal capacity on the one hand, and a private individual or corporation on the other, may be within the inhibition of the federal constitution.

*Second.* It may seem surprising, but is nevertheless true, that the most serious and difficult question presented in nearly all of the cases upon the subject before us was as to whether or not a valid contract existed, and counsel have resolved that this case shall be no exception to the rule. We therefore proceed to consider the inquiry, is there here a contract to be impaired? Under the law no authority whatever exists for issuing county orders or warrants as loans or gifts, or in recognition of anything save a valid and binding debt or obligation. The consideration of this debt must be services rendered or materials furnished or other benefit received by the county. The fact that the debt is due, and the obligation to pay it exists, when the warrant issues, is a matter of no importance. The warrant is itself not the debt nor contract, but the evidence thereof. The obligation would exist without the warrant. But for convenience in the management of county affairs, it is deemed better to have such debt or obligation evidenced by the writing termed an order or warrant. As already suggested, however, prior to 1885 it was expressly declared by law that such order or warrant should be received in payment of county taxes. Of this right it must be presumed persons dealing with the county had knowledge. It was, therefore, in effect, as though the county had said to A.: "You do this work or furnish these materials, and I will give you $100. When the debt accrues, I will issue and deliver to you a written order upon myself evidencing the same. This order, if not sooner paid in money, you may, at the proper time, use to liquidate a corresponding amount of the debt you owe me in taxes." A. accepts the proposition, and performs the work or furnishes the materials. The fact that he can pay his taxes with the warrant received is the principal inducement leading him to perform the work or to part with his property. It perhaps constitutes the most important part of the consideration for his acceptance of the proposition. Have we not here every

element of a binding contract,— parties capable of contracting, a legal subject-matter, a plain proposition made and accepted, and ample consideration moving from both sides? Upon what principle would we be justified in declaring that the right conferred by law to use the warrant, or the debt which it represents, in discharge of a claim for taxes, is not of the very essence of the contract? Without this element A. would never have accepted the proposition; he would not have performed the labor or parted with his property.

It is contended, however, that a *general* law is never a contract. This declaration may be true. It is, nevertheless, also true that sometimes when conditions have been accepted, and acts have been performed, or valuables parted with, thereunder, such a law constitutes a part of the contract, or is inseparably connected with the obligation thereof. *New Jersey v. Yard,* 95 U. S. 104; *New Orleans v. City Hotel,* 28 La. Ann. 423; Cooley, Const. Lim. (5th ed.) 346; *Bush v. Shipman,* 4 Scam. 186; *Ogden v. Saunders,* 12 Wheat. 213. There is no analogy whatever between statutes authorizing warrants to be received for taxes, and the ordinary laws exempting property from taxation or from sale under execution. The forbearance to levy taxes is usually a privilege extended without *any consideration* whatever, and the exemption from attachment or execution is a gratuitous favor, given solely for the advantage of the individual; while, on the other hand, as already shown, these warrants can only issue where the municipality has received material benefit, and where there is such a debt or obligation as in and of itself constitutes a legal liability. It is also to be observed that the provision authorizing warrants to be received in payment of taxes was unquestionably enacted more for the benefit of the county than for that of the individual. The legislature, in its wisdom, assumed that clothing warrants with this attribute would give them an increased and stable value; and thus

advantage would accrue therefrom to the county.   It matters not that subsequent experience may have demonstrated to this body the fact that the benefits are more than offset by the evils produced.

But an effort is made to disclose a distinction between the particular warrant involved in the *mandamus* proceeding before us, and other county warrants in general. It is said that this warrant represents fees due for services rendered in attendance upon court by the payee as a witness in a criminal case.   We are told that the state has power to coerce the rendering of this service for nothing; that it is a duty which the individual owes to the public, and for which he is not necessarily entitled to compensation.   Assuming these propositions to be true, an effort is made to show that the statute authorizing payment of fees is similar, so far as this question is concerned, to the exemption statutes above mentioned; that, since the state has a right to demand these services for nothing, it is just the same as though the legislature ordained a gift to the witness, and the right to revoke such gift cannot be questioned.   It would be disastrous to the public weal were we to recognize the doctrine counsel contend for.   The logical result of their proposition is that, notwithstanding the statutes providing for these fees, the county may repudiate every warrant issued to witnesses for their services in criminal causes.   The propriety of allowing compensation from the public treasury in such cases has been long and generally recognized. That it is a necessity in the due administration of public justice, scarcely admits of doubt.

The proceeding or transaction possesses peculiar characteristics.   It is wholly unlike an ordinary gift *inter vivos;* it bears but slight resemblance to a bounty offered or an exemption allowed from sale or taxation.   While the state may compel the rendering gratuitously of such services, it has not seen fit so to do.   On the contrary, it has offered an inducement in the guise of a promise.   It

has said to the witness: "If you will respond, when properly requested so to do, and give your testimony, the county, in whose behalf I have authority to speak, will pay you a certain sum of money." Relying upon this promise, the witness *voluntarily* appears, pays his expenses, and gives his time and his services. Thereupon, in recognition of the contract, performance thereof by the witness, and its supposed liability in connection therewith, the county executes and delivers to him an order for payment upon its treasurer. Were any acceptance by this officer needed, it is evidenced by his written indorsement: "Presented for payment. [Date.] No funds. Warrant draws interest from this day at ten per cent. per annum. A. B., Treasurer." On the surface, this transaction contains every element of a valid and binding contract. It is only when we go behind the transaction itself, and also behind the legislation by which it is authorized, that we discover the supposed imperfection. To repudiate the promise after having received the services rendered in contemplation thereof would be an act of bad faith deserving of the severest censure. The contract is wholly executed, so far as the witness is concerned. The county also has executed the same to the extent of issuing its order for the money due; the transaction is not *ultra vires;* the only blemish is that, had one of the contracting parties chosen, it might have compelled the other to render gratuitously the service for which it has promised to pay. Under all the circumstances, we shall decline to distinguish between the instrument before us and other county warrants, so far as the consideration therefor is concerned. If doubts upon the correctness of this view existed, a regard for the public interests involved would impel us to resolve them as above announced.

We shall assume, therefore, that the warrant under consideration represents a valid contract; and it needs no argument to show that the act of 1885, if applied thereto,

would materialy and injuriously affect the same. It would operate to release one of the parties from its obligation. The contract of the county was to receive this warrant in payment of taxes. The statute which says that it shall not be so received, and thus entirely discharges the county of its duty to comply with its contract, most assuredly impairs the obligation thereof. It is a negation of the law which bound the county to perform its undertaking. *Sturges v. Crowninshield*, 4 Wheat. 122. It is worthy of note, in passing, that the organic law of the state upon this subject is even stronger than the federal constitution. The latter simply prohibits states from passing laws "impairing the obligation of contracts;" the former forbids the enactment of a law "impairing the obligation of contracts, or *retroactive in its operation*." We are not permitted to say that these phrases are synonymous in meaning, and it follows that the latter was intended to reach cases not covered by the former.

We do not underestimate the importance of the subject before us. It is fully understood that we are dealing indirectly with the taxing power of the state; and that only upon the most cogent reasons should this legislative prerogative, even as to the manner of its exercise, be in the least interfered with by us. We subscribe most cordially to the following declarations on the subject by the supreme court of the United States, made in *Tucker v. Ferguson*, 22 Wall. 527:

"The taxing power is vital to the functions of government. It helps to sustain the social compact, and to give it efficacy. It is intended to promote the general welfare. It reaches the interests of every member of the community. It may be restrained by contract in special cases for the public good, where such contracts are not forbidden. But the contract must be shown to exist. There is no presumption in its favor. Every reasonable doubt should be resolved against it. Where it exists, it is to

be rigidly scrutinized, and never permitted to extend either in scope or duration beyond what the terms of the concession clearly require. It is in derogation of public right, and narrows a trust created for the good of all." ·

But it must be observed that, in the *first* place, the contract here considered is not strictly in *restraint* of the taxing power, though it influences the exercise thereof; *secondly*, that this contract *is* made out beyond a reasonable doubt. It hardly seems necessary to suggest that we do not hold the legislative acts authorizing the receipt of warrants in payment of taxes irrepealable. We fully recognize the beneficent doctrine that one legislature cannot, in general, tie the hands of its successors. Our position is simply that a provision contained in the statute adopted by one legislature may, when accepted and acted upon by a private citizen or corporation, result in a contract which succeeding legislatures are powerless to repudiate.

Again, it is said that petitioner in this case, being assignee of the warrant, can in no event maintain the action; because, even if the instrument represents a valid contract, yet it is not negotiable. While there is not entire unanimity on the subject, the principle is well established that these instruments, when containing words of negotiability, are assignable. In such case the title and ownership pass to the assignee, and he may bring an action thereon. Several of the states, including Colorado, permit him to sue in his own name and for his own benefit, and the presence or absence of negotiable words in no manner affects his rights in the premises. But the doctrine is also equally well recognized that these warrants do not possess all the usual attributes of negotiable paper. The ownership of the assignee is never discharged of defenses which might have been made against the original payee. Unlike bills of exchange and promissory notes negotiated before maturity, county warrants are liable, in the hands of all persons, to every defense which the county might have interposed in an action brought by

the original payee.   *Wall v. County, etc.* 103 U. S. 74;
1 Dill. Mun. Corp. (3d ed.) § 487.

*Third.*   In support of the argument that the statutes
authorizing the receipt of warrants in payment of county
taxes were themselves unconstitutional and void, coun-
sel advance three distinct propositions: (*a*) That they are
in conflict with section 7, article 10, which prohibits the
general assembly's imposing taxes for municipal purposes,
and authorizes that body to invest the corporate authori-
ties with power to assess and collect the same; (*b*) that
they are inconsistent with section 38, article 5, of the
constitution, depriving the general assembly of the power
to exchange, transfer, release, postpone, or in any way
diminish, the liability or obligation of a person to a
municipal corporation; (*c*) that they are an infringement
of section 11, article 2, providing that the general assem-
bly shall not grant any irrevocable immunity.

Except as limited or controlled by constitutional pro-
visions, the general assembly is omnipotent in relation
to municipal corporations within the state.   It calls them
into being and endows them with whatever powers and
privileges they possess.   If in its judgment advisable,
their existence, even, may at any time be absolutely ter-
minated.   In these and other particulars it bows only to
the superior behests of the people expressed in their
organic law.   The object in creating these corporations is
to better promote the interests of the people in localities
than would be possible without them; and the action of
the general assembly in the premises must be understood
as intended to advance the public good.   It may fairly
be said that it is a right possessed by this body to adopt
such legislation in relation to the making of municipal
contracts as will promote the public weal, while preserv-
ing the honor and good faith of the corporate body.

The legislation now objected to had reference to certain,
contracts made by counties.   It simply provided that
when counties entered into contracts through which ma--

terial benefits were obtained for themselves, and thereby became indebted to other parties, they should act with the understanding that, as an element of such contracts, they were to receive in payment of taxes the warrants tendered by them in lieu of cash upon their indebtedness. We look in vain to the constitutional provisions cited for anything which directly or indirectly controls the legislative discretion in this matter. By the statutes now under consideration, that body imposed no taxes; neither did it deprive the proper county officials of the power to assess and collect the same. No immunity, irrevocable or otherwise, was given; and no liability or obligation was released, postponed or diminished. Taxes are paid by warrant instead of money; but this was a matter of contract to which the municipal corporation was itself a party, and there is nothing in the constitution, we believe, which prevents the county — the power to do so being conferred by statute — from making a valid contract by which it is stipulated that its warrants shall be a legal tender to it for taxes. We do not pass upon the question, because it is not before us, as to whether the legislature could inject this element into contracts previously made; and consequently this opinion by no means declares that the county could be compelled to receive for taxes warrants issued prior to the passage of such laws as the statutes in question.

We think, in conclusion, that so much of the act of 1885 as relates to the payment of taxes in cash, instead of warrants subsequently issued, is constitutional and valid; but that it cannot be so construed as to prohibit the receipt of county warrants in payment of county taxes, which were issued prior to its adoption and under the statutes repealed. As already indicated, we hold, for the reason above given, that the rest of the act is unconstitutional and void.

It follows, therefore, from these conclusions, that both of the demurrers must be overruled. No further plea

being interposed, we are of opinion that a perpetual injunction should issue in the suit against Hall; and it is accordingly so ordered. It is also ordered that respondent in the proceedings against May have time, and until the 8th day of January, A. D. 1886, to controvert by answer matters of fact stated in the alternative writ and petition. In case of failure so to do, the peremptory writ prayed for will issue on the date last above mentioned.

*Demurrer overruled.*