<hr/>

[No. 1346.]

THE PEOPLE EX REL. REYNOLDS v. THE BOARD OF COUNTY COMMISSIONERS OF RIO GRANDE COUNTY.

1. COUNTY WARRANTS—ASSIGNMENT—NONNEGOTIABLE.

County warrants may be transferred by assignment and title passes to the assignee but they possess none of the characteristics of negotiable commercial paper.   The liability of the county is the same whether the warrants are in the hands of an assignee or the orignal payee.

2. JUDGMENT AGAINST COUNTY—PAYMENT—VOID COUNTY WARRANTS —MANDAMUS TO LEVY TAX.

In a suit against a county it was agreed between the plaintiff and the board of county commissioners that plaintiff should pay the costs of the suit and should receive in satisfaction of his judgment county warrants drawn against money in the county treasury not otherwise appropriated, and that the county would make no defense. Upon rendition of judgment and the presentation to the board of a transcript showing satisfaction the board delivered to the plaintiff warrants of the county as agreed, which he received and accepted in full satisfaction of the judgment, and instructed the clerk to enter satisfaction on the judgment docket, which the clerk failed

to do. The warrants thus received were afterwards presented to the treasurer who refused payment and indorsed on them "no funds." The statute then in force provided that a judgment against a county should be paid by the levy of a tax for that purpose with a proviso that the board, instead of levying the tax, might pay the judgment by a warrant upon the county treasurer. *Held* that the authority to issue a warrant at once instead of levying a tax contemplated the presence in the treasury of money applicable to the payment of the judgment, and unless there was money in the treasury to meet the warrant its issuance was unauthorized and the board had no alternative except to levy the tax, and the warrants thus issued and received by plaintiff constituted no payment of the judgment. If satisfaction had been entered on the record, a proceeding to cancel would be sustained, but as no satisfaction was entered of record mandamus to compel the board to levy the tax should be sustained upon the judgment.

3. JUDGMENT AGAINST COUNTY—DISCRETION OF BOARD—STATUTORY CONSTRUCTION.

Section 527, Gen. Stats. as amended Sess. Laws, 1887, page 240, provides that "when a judgment shall be given and rendered against a county * * * no execution shall issue thereon but the same may be paid by the levy of a tax, but nothing contained in this section shall operate to prevent the county commissioners from paying all or any part of any such judgment by a warrant drawn by them upon the ordinary county fund in the county treasury * * * and provided further, that the powers herein given to the board of county commissioners shall not be construed as requiring said board to levy any special tax to pay any judgment, unless in its discretion the said board shall determine." *Held* that the effect of the last proviso was not to leave it discretionary with the board of commissioners to say whether or not a judgment against a county should ever be paid, but should be construed as leaving it to the discretion of the board to pay a judgment either by levying the tax or by warrant drawn on the ordinary county fund, when the judgment can be paid by warrant, but if it cannot be paid by warrant on the ordinary fund the special tax must be levied.

4. JUDGMENTS—COLLATERAL ATTACK.

In an action for mandamus to compel the board of county commissioners to levy a tax to pay a judgment against a county the judgment is conclusive of all questions which were or might have been litigated in the suit.

*Error to the District Court of Rio Grande County.*

Messrs. PATTERSON, RICHARDSON & HAWKINS, for plaintiff in error.

Mr. IRA J. BLOOMFIELD, Mr. JESSE STEPHENSON and Mr. C. M. CORLETT, for defendants in error.

THOMSON, P. J., delivered the opinion of the court.

This proceeding in mandamus was instituted to compel the board of county commissioners of Rio Grande county to levy a tax to pay a judgment theretofore obtained against that county, and of which the relator had become the owner. The petition averred the recovery of the judgment on the 10th day of September, 1885, by Asa F. Middaugh; its non-payment; a demand upon the board by the relator, after he had become its owner, to levy a tax for its payment; and an order of the board refusing and rejecting the demand. The respondents made return in the nature of demurrer to the alternative writ; and the demurrer being sustained, judgment was entered for them. From that judgment the relator prosecuted error to this court.

Two other suits had been brought against the board, on the relation of Frank W. Rollins, for mandamus to compel the levy of tax to pay two other judgments of which he was the owner. The petitions in his cases were the same as the one in this case, and the same proceedings were had in them as in this, and at the same time. They also were brought here by writ of error, and the questions involved in all, were disposed of in one of the cases in which Rollins was the relator. In an opinion, in which the questions arising upon the petition were exhaustively discussed by Bissell, J., the conclusion was reached that upon the averments of the pleading the relator was entitled to the relief which he sought. *People ex rel. Rollins v. Rio Grande County,* 7 Colo. App. 229. The same judgment was given by this court in all the cases. This cause, with the others, was then remitted to the district court of Rio Grande county, where the respondents answered the petition and writ, alleging that prior to the commencement of the suit by Middaugh against the county, it was agreed between him and the board of commissioners

that the latter would make no defense to the suits to be insti-
tuted, and that he would pay the costs of the suit, and accept
county warrants to be drawn on any moneys in the treasury
not otherwise appropriated, in full and complete satisfaction
of his judgment; that he accordingly instituted his suit and
obtained his judgment; that he thereupon received from the
board county warrants, drawn upon the treasurer, in full sat-
isfaction of his judgment, and satisfied the judgment of rec-
ord.    The replication consisted of denials of some of the
allegations of the answer, and demurrers to others.    The
relator deposited the warrants in court for the use of the de-
fendants.

At the trial it was stipulated between counsel that prior
to the commencement of Middaugh's suit it was agreed be-
tween him and the board that he should pay the costs of the
suit, and receive, in satisfaction of his judgment, county
warrants drawn against money in the county treasury not
otherwise appropriated; that upon the rendition of the judg-
ment the board delivered to him the warrants of the county,
payable out of money in the treasury not otherwise appro-
priated, which he received and accepted in full and complete
satisfaction of the judgment; that these warrants were after-
wards presented to the county treasurer, who refused pay-
ment, and indorsed upon them " no funds; " that the war-
rants and all Middaugh's rights under the judgment, were
assigned to the relator; and that no part of the warrants has
ever been paid.    The respondents introduced in evidence a
certified transcript of the judgment, on which appeared a pur-
ported satisfaction, and upon the production of which to the
board the warrants were issued; but no satisfaction appeared
on the docket of the clerk, although Middaugh, before re-
ceiving the warrants, had ordered him to enter satisfaction.
It was also admitted that the board had unqualifiedly refused
to order the levy of the tax to pay the judgment.

But one question is made the subject of argument, and
there is really no other in the record; and that is, " Do the
facts proven and admitted show a satisfaction of the judg-

ment?" If the judgment has been satisfied, it is manifest that this action will not lie. It is therefore to be ascertained whether the acceptance by Middaugh of the warrants pursuant to the agreement between him and the board, together with the order given by him to the clerk, under the circumstances surrounding the transaction, and in view of subsequent developments, amounted to satisfaction. Section 527 of the general statutes, which was the law in force when this judgment was rendered, provided that a judgment against a county should be paid by a tax to be levied for the purpose, with a proviso that the board, instead of levying the tax, might pay the judgment by a warrant upon the county treasury. Those were the only methods by which a judgment against a county could be paid. The language of the statute would perhaps authorize the levy of the tax regardless of the condition of the treasury; but the authority to issue a warrant at once, instead of levying a tax, contemplated the presence in the treasury of money applicable to the payment of the judgment, and which on presentation of the warrant would be paid to the holder. By the terms of the agreement this judgment was to be paid by the issue of a warrant, and not by the levy of a tax; but unless there was money in the treasury to meet the warrant, its issuance was unauthorized, and the board had no alternative except to levy a tax.

A county warrant is the means by which funds for the payment of claims can be reached in the county treasury. It is the mode whereby money is transferred from the treasurer of the county to its creditors, and the payment of its debt effected; and some such method is absolutely necessary to the proper and accurate transaction of the county's business. The warrant is the authority of the treasurer to pay out the money of the county upon the debt, but its mere delivery to the creditor does not constitute payment. Its purpose is to enable him to secure the money to be applied in payment; and if the warrant fails of that purpose, his claim remains unsatisfied. We are unable to find that the question of the effect of the issue of a county warrant upon the claim for which it was

given, has ever arisen in this state, but it has been directly passed upon in other jurisdictions; and, so far as our researches have extended, it is the unanimous judicial opinion that the mere issue and delivery of a warrant of that kind, is not a payment of the debt, but that the debt is paid only in the event that the money is realized on the warrant. *Paddock v. Symonds*, 11 Barb. 117; *Bank v. Baber*, 6 Lea, 273; *Dyer v. Covington Township*, 19 Pa. St. 200; *Allison v. Juniata Co.*, 50 Pa. St. 351; *Argenti v. San Francisco*, 16 Cal. 256, 275.

But there was something more in the transaction of which these warrants were the outcome, than the mere recovery of a judgment and its attempted payment by warrants; and some features peculiar to itself are made the basis of an argument by counsel which seems to demand examination. First, prior to the commencement of Middaugh's suit, it was agreed between him and the board of commissioners that if the board would make no defense to the action, he would pay the costs of the suit, and receive county warrants, drawn on moneys in the county treasury not otherwise appropriated, in full satisfaction and payment of his judgment. Second, the suit was instituted, and in accordance with the agreement, the county interposed no defense; judgment was given for the amount of his claim, and warrants payable out of moneys in the treasury not otherwise appropriated, issued to him, which he received in full and complete satisfaction of his judgment, instructing the clerk of the court to enter satisfaction on the judgment docket, which, however, the clerk failed to do. Now it is said that by virtue of the agreement in pursuance of which the warrants were issued, Middaugh was bound to accept them in satisfaction of his judgment; and that his acceptance of the warrants as payment, and his instruction to the clerk to enter satisfaction, together with his production to the board of a transcript which showed satisfaction, is conclusive upon him and his assignee that the judgment was in fact satisfied. Of course if Middaugh cannot deny that the judgment was

satisfied, neither can the relator, because, except that the title to county warrants passes by assignment, they possess none of the characteristics of negotiable commercial paper; and whether they are in the hands of an assignee, or of the original payee, the liability of the county in respect to them is the same. *People v. Hall*, 8 Colo. 485. Pursuing the argument further, counsel undertake the deduction of an inference that there was some infirmity in Middaugh's claim against the county, which made him desirous that it should not be exposed to a danger of a defense; and that, therefore, in consideration that no defense should be made, he agreed to accept the warrants themselves as an absolute discharge of the judgment. In searching for a reason for the agreement, it is not necessary to resort to inferences, especially inferences unfavorable to the motives of the parties. On the face of the transaction, sufficient and entirely legitimate inducements to the agreement, and by which both parties may well have been influenced, are apparent. As we held when the case was here before, the judgment rendered is conclusive in this action that the original claim was a valid one. We must presume that if a defense had been made, the result would have been the same. Now what were the considerations which operated on the minds of the parties to bring about the agreement? Undoubtedly Middaugh desired to secure the money due him as soon as he could. The board might, by interposing some kind of a defense, delay the rendition of the judgment. They might then insist on their right to pay the judgment by the levy of a tax, and this would involve further delay, for, perhaps a long period of time. For the sake of obtaining his money speedily, Middaugh probably considered that he could well afford to pay the costs of the proceeding. On the other hand it was an object with the board to effect a saving of expense to the county. Without the agreement, the costs would have followed the judgment, and the county would have been compelled to pay them. If the money was on hand in the treasury to satisfy the judgment, the board would be subjected to no inconvenience by

drawing orders against it instead of levying a tax. The advantage therefore which accrued to the board from the agreement, was the exemption of the county from the costs. The promise of warrants which would bring his money immediately, was a sufficient consideration to Middaugh for his agreement to pay the costs, and his agreement to pay the costs was a sufficient consideration for the agreement of the board to permit judgment to go, and to draw its orders on funds in its treasury.

The warrants which Middaugh agreed to accept in satisfaction of his judgment were orders on money in the treasury. For the purpose of paying judgments, without the intervention of a levy, the statute gave the board no authority to issue any other kind of warrants; but the agreement itself specifically, although perhaps unnecessarily, provided that these warrants should be drawn against money on hand. Such warrants would be equivalent to cash, because on presentation they would bring the cash. When Middaugh ordered the entry of satisfaction, and produced the transcript showing satisfaction, he did so in obedience to a requirement of the board, as a condition upon which the warrants should be issued. Afterwards he ascertained that there were no funds in the treasury available for the payment of the warrants. He therefore did not receive the warrants he contracted for, or such warrants as might lawfully be issued for the payment of the judgment. The consideration of his agreement to satisfy the judgment failed, and his agreement fell to the ground with it. In view of the facts, the most that can be said for the warrants is that they stood upon the same footing with any other county warrants; and the judgment was not paid because the warrants did not produce the money to pay it. Upon the foregoing facts, if entry of satisfaction had been made upon the record, a proceeding to cancel it would have been first in order, and would have been sustained; but as such entry was not made, no preliminary suit was necessary, and there was nothing in the way of the institution and prosecution of this proceeding.

By a subsequent act of the legislature, approved April 28, 1887, section 527 of the general statutes, to which we have referred, was amended so as to read as follows:

" When a judgment shall be given and rendered against a county of this state in the name of its board of county commissioners, or against any county officer, in an action prosecuted by or against him in his official capacity, or name of office, when the judgment is for money, and is a lawful county charge, no execution shall issue thereon, but the same may be paid by the levy of a tax upon the taxable property of said county, and when the tax shall be collected by the county treasurer, it shall be paid over, as fast as collected by him, to the judgment creditor, or his or her assigns, upon the execution and delivery of proper vouchers therefor; but nothing contained in this section shall operate to prevent the county commissioners from paying all or part of any such judgment by a warrant, drawn by them upon the ordinary county fund in the county treasury; *Provided*, That the power hereby conferred to pay any such judgment by a special levy of such tax, shall be held to be in addition to the taxing power given and granted to such board, to levy taxes for other county purposes, but the board of county commissioners shall levy under this law only such taxes as they, in their discretion, may deem expedient or necessary, and all taxes levied by authority of this act shall not exceed one and one-half per centum of the dollar of assessed property for any one fiscal year; *And, provided, further*, That the powers herein given to the board of county commissioners shall not be construed as requiring said board to levy any special tax to pay any judgment, unless in its discretion the said board shall so determine." Session Laws, 1887, p. 240.

While in our opinion the foregoing enactment leaves the prior law applicable to the question before us unchanged, yet, for reasons which will appear, we think there is no impropriety in subjecting it to some examination, for the special purpose of ascertaining what was intended by the last proviso. When we passed on the case before, we held that the

effect of this proviso was not to leave it discretionary with the board of commissioners to say whether or not a judgment against a county should ever be paid.   This decision was followed with reluctance by the district court, the judge intimating that it was contrary to the evident intention of the legislature.   While the disposition of the question in Judge Bissell's opinion, is, to our minds, entirely satisfactory, and in harmony with established legal principles, it may not be amiss to add a few words to what he has said.   We think, when we apply the settled rules of construction to the statute, that it will be found that our decision was not only not contrary to the intention of the legislature, but that a purpose to invest the board of commissioners with an authority, under any circumstances, to repudiate any valid obligation of the county, never entered the legislative mind.

If the last proviso were a detached and independent enactment, making it discretionary with the board whether it should ever levy any special tax to pay any judgment, the view of the lower court as to the legislative intent might perhaps be correct.   But it is not a separate enactment.   The portion of the act which includes it, consists of but one sentence, the several parts of which are interdependent.   The proviso is so connected by its language with what precedes it, that it cannot be insolated without destruction of its sense; and in the position which it occupies, to find what it was intended to mean, the whole must be read.   If the learned judge has correctly conceived its meaning, then we have an enactment which makes it mandatory upon the commissioners, under certain circumstances, to levy a tax to pay a judgment against the county, and yet leaves it optional with them, without regard to circumstances, whether they shall do so or not; in other words, which provides that they must, but need not, levy the tax.   Such a rendering of its language would reduce the statute to an absurdity.   Let us see whether an easy and natural construction of the act cannot be found.   It first prohibits the issue of an execution on the judgment, and requires the levy of a tax for its payment, but provides

that the requirement shall not prohibit the commissioners from paying part or all of the judgment by a warrant drawn against the ordinary county fund in the treasury. The judgment may be paid wholly by tax, or wholly by warrant; or partly by tax and partly by warrant; but by tax or warrant, or by both tax and warrant, it must be paid. After leaving the amount of the levy, up to a specified limit, for any one fiscal year, within the discretion of the board of commissioners, the act provides that the powers given to the board shall not be construed as requiring them to levy any special tax to pay any judgment, unless in their discretion they shall so determine. This proviso must be considered in connection with the authority conferred on the board to pay the judgment by a warrant, and was designed to emphasize the liberty granted to the board to pay the judgment by warrant, in case the condition of the treasury should be such that payment could be made in that way. Notwithstanding there may be sufficient money in the treasury for the purpose of payment, the board may still levy the tax; they need not use the money on hand; but it is in their discretion whether they shall use the money or levy the tax; and it is when there is sufficient money in the treasury to pay the judgment, and which can, legally, be so applied, that the provision that the powers given to the board shall not be construed as requiring them to levy a tax to pay the judgment, becomes applicable. The discretion with which this proviso invests the board, is and must be limited and controlled by the language preceding it, and of which it is a continuation; and as the enactment must be so construed that its several parts shall be consistent with each other, the proviso amounts to simply this: that the levy of the tax shall not be compulsory on the board when the judgment can be paid by warrant. It is then in their discretion to determine whether it shall be paid by the levy of a special tax or not. This construction gives effect to, and harmonizes, every portion of the section; while the other brings its parts into irreconcilable conflict, and for that reason, if for no other, is not to be tolerated.

In respect to the legal principles applicable to cases of this kind, we have nothing to add to the former opinion. In that opinion Judge Bissell has carefully examined every question connected with the right of the owner of an unpaid judgment against a county, to a writ of mandamus, compelling the proper county authorities to levy a tax for its payment; and whatever might be said on the same subject now, would be mere repetition. The judgment is reversed, and the district court instructed to ascertain and determine what per centum of the dollar of the assessed property, within the limitation prescribed by the legislature, for any one fiscal year, should be levied, and having made such determination, to award to the petitioner a peremptory writ of mandamus, commanding the board of commissioners to levy such tax for each fiscal year until the judgment shall be paid.

*Reversed.*

Wilson, J., not sitting.

### ON MOTION TO MODIFY JUDGMENT.

Per Curiam. The defendant in error has submitted a motion to modify the judgment heretofore entered, in such manner that it shall simply reverse the judgment of the district court, and remand the cause to that court for a new trial. The reasons assigned for the motion are that the answer on which the case went to trial, and which was prepared by counsel other than those now representing the county, fails to state important facts, which, if stated, would be a complete defense to the action, and which, if a new trial were awarded, could be introduced into the answer by way of amendment.

We are aware of the burden of debt which is weighing upon the inhabitants of the county; and if the facts set forth in its application, and which it desires to incorporate into its answer, would constitute a defense to the action, we should cheerfully comply with its request.

What it proposes to plead and prove, may be summarized

as follows: That the warrants upon which the judgment was rendered, were void, because the debt which they represented was contracted in violation of the constitutional provision fixing the limits within which valid indebtedness may be contracted by counties; that prior to the rendition of the judgment, Middaugh agreed with the then commissioners that if they would make no defense to his action, he would accept in satisfaction of his judgment illegal, unconstitutional and void warrants,—warrants which he knew there was no money in the treasury to pay, and which he knew would never be paid; that the commissioners in reliance upon this agreement suffered judgment to go without defense; and that the agreement was carried out by the issuance to, and acceptance by, Middaugh, in full satisfaction of his judgment, of void and worthless warrants, on account of which the county did not, and could not, incur any liability.

Now, we do not undertake to say that upon a proper case being presented, in a direct proceeding for the purpose, a court of equity would not go behind the record and relieve a county from an unconscionable judgment; but we do not see how the matters alleged, if pleaded and proved, could possibly be of any avail to the county in this litigation. This is a proceeding at law to compel the payment of the judgment. For the purposes of the action we must start with the judgment as we find it in the record. We cannot look behind it; and evidence of the nature of the indebtedness on which it was recovered would be inadmissible. It is conclusive of all questions which were, or might have been, litigated in the suit. In this action we are bound by an ironclad presumption that the indebtedness for which the judgment was recovered was not contracted in violation of the constitution, but was valid and unpaid, and entitled Middaugh to the judgment he obtained. Such was our opinion when the case was here before, and such is our conviction still.

We begin then with a valid judgment, and it is proposed

to plead and prove that an agreement was entered into by which that judgment was to be satisfied by the delivery of illegal and utterly void county warrants,—in other words, an agreement by which the judgment creditor was to surrender a valid and collectible claim against the county for nothing. Such an agreement,—supported by no consideration,—could not be enforced. It could not be the subject of an original action, and it could not be interposed as a defense to this action. For the foregoing reasons the motion must be denied.