12  277
s26s 285

[No. 1502.]

MITCHELL v. THE COLORADO MILLING & ELEVATOR CO.

1. NEGLIGENCE—EMPLOYERS' LIABILITY ACT—STATUTORY CONSTRUCTION.

The employers' liability act (Laws, 1893, p. 129) providing for the recovery of damage sustained by agents, servants and employees resulting from negligence of fellow-servants, and requiring plaintiff to give notice of the injury within sixty days, applies only to actions brought by an agent, servant or employee, and has no application to an action brought by a mother for the death of a son who was an employee of defendant.

2. SAME—CONSTITUTIONAL LAW.

The employers' liability act (Laws, 1893, p. 129) in so far as it attempts to affect actions by others than agents, servants and employees is unconstitutional and void, as in contravention of section 21, article 5 of the constitution requiring the subject of an act to be clearly stated in the title thereof.

*Error to the District Court of Larimer County.*

Mr. Frank J. Annis, Messrs. Garbutt & Garbutt, Mr. J. Warner Mills, Mr. Clinton Reed and Messrs. Patton & Esteb, for plaintiff in error.

Messrs. Robinson & Love, Messrs. Rogers & Shafroth, Mr. T. J. O'Donnell and Mr. Milton Smith, for defendant in error.

Wilson, J.

The allegations in the amended complaint in this action were as follows:

"Comes now the said plaintiff by her attorney, and by leave of court first had, files this her amended complaint in the above entitled cause, and for cause of action alleges:

"1. That the defendant is a corporation, duly organized under the laws of the state of Colorado, and owns and operates what are known as 'The New Lindell Mills,' situate in the city of Fort Collins, county of Larimer, and state of Colorado, with its principal office situate in the city of Denver and state of Colorado.

"2. That at the times hereinafter mentioned, the said defendant was engaged in rebuilding said mills at Fort Collins, the same having been theretofore destroyed by fire, and at said time and for a long time prior thereto one Benjamin F. Hottel was the resident agent and manager of said mills, for and on behalf of defendant company, vested with general power in the management of said mills, with the right to employ and discharge men, direct and control their actions in and about the working of said mills as well as the rebuilding of the same, which latter work was under the immediate supervision, direction and control of said Hottel as the resident agent, manager and representative of defendant company.

"3. That on the 7th day of August, 1896, one William M. Mitchell, who was then and there the unmarried son of plaintiff, was employed by defendant company, through its manager aforesaid, to assist in raising a smokestack at said mills,

and said work was under the immediate charge, direction and control of said manager Hottel.

"4. That the said William M. Mitchell was at that time a few months over the age of twenty-two years, and had no knowledge or previous experience with handling or raising of smokestacks, and was uninformed and unacquainted with the methods employed and machinery used in conducting such operations, and relied upon the knowledge, judgment, skill and experience of said manager Hottel, which he believed said Hottel possessed, and who was in charge and gave the directions with respect to handling and placing the machinery used to raise the said stack.

"5. That under the direction of said Hottel, manager, acting for and representing defendant company, it provided a derrick, for lifting said smokestack into position, which had not been constructed for that purpose nor to lift any greater weight than 2,500 pounds, of which facts the said Mitchell had no notice or knowledge.

"6. That plaintiff is informed and believes and so avers the fact to be that the said smokestack weighed about 4,500 pounds, and on said last mentioned day, under the direction of said manager as aforesaid, the said smokestack was connected with the lifting apparatus of said derrick, the block and tackle being then unskillfully, carelessly and negligently caused to be attached to an eye bolt in said derrick so that the whole of the weight of said stack was placed upon a small bolt, and the said manager then and there caused the windlass to which the rope was attached for lifting the said stack, to be negligently and carelessly placed directly under the stack between the engine house and elevator buildings, so that while said stack was being hoisted it was immediately over the heads of those employed upon the windlass, and that the said Mitchell having no notice or knowledge that said derrick was being used in an unsafe manner, or that the said manager had not exercised reasonable prudence, skill and judgment in providing said machinery and locating the same, continued to work at said lifting apparatus, and while

so engaged at the windlass turning the same, and without any default or neglect on his part, the eye bolt holding said apparatus to the stack broke and the said stack fell, striking said Mitchell, from the effect of which blow he then and there died.

" 7. Plaintiff further avers that the death of the said William M. Mitchell was caused by the negligence of the defendant company, and its manager as its principal representative as aforesaid, in providing the unsafe and defective machinery aforesaid, and the grossly negligent manner and method in which the same was caused to be used by the said manager.

" 8. That the said William M. Mitchell was a few months over the age of twenty-two years and in sound bodily health at the time of his death; and at the time thereof and for a long time prior thereto supported plaintiff from his earnings, who, being advanced in years and in poor bodily health, was dependent upon her said son for maintenance and support, and which said earnings at the time of his death averaged $600 per annum.

" 9. That the bonds of matrimony existing between plaintiff and her husband, Michael Mitchell, were absolutely dissolved by decree of divorce duly entered of record in the county court of Jefferson county, state of Colorado, on the 25th day of July, A. D. 1882, and in and by the terms of said decree plaintiff was given the custody of the minor children, William M. Mitchell and Kate Mitchell, and charged with their support and maintenance, without any allowance from said Michael Mitchell.

" 10. That by reason of the default and negligent conduct of defendant company and its manager, as principal and representative, in causing the death of said William M. Mitchell, the plaintiff has been damaged in the sum of $5,000.

" Wherefore, plaintiff prays judgment against the defendant company for the sum of $5,000, and for costs of suit."

To this the defendant interposed a demurrer on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained. The sole question at

issue seems to be whether or not it was necessary for plaintiff in order to maintain this action, to have given to defendant the notice required by section 2 of what is known as the Employers' Liability Act, adopted in 1893. Laws, 1893, p. 129. This act of 1893 is confessedly based upon and copied from a similar act passed in Massachusetts in 1887, and this in turn upon the English employers' liability act of 1880. This being the case, prior construction by the English and Massachusetts courts of the acts within their respective jurisdiction is important in determining the construction to be given to the same terms in our own statute. Whilst it may not be conclusive, the subsequent enactment of the statute by the Colorado legislature is strong persuasive evidence of the legislative adoption of these prior constructions of the terms, as well as the intent and purpose of the act, and the rules by which it should be construed. With respect to the English act, it was said in *Gibbs v. Great Western Railway*, 12 Q. B. D. 208 : " This act of Parliament having been passed for the benefit of workmen, I think it the duty of the court not to construe it strictly as against workmen, but in furtherance of the benefit which it was intended by Parliament should be given to them ; and therefore as largely as reason enables one to construe it in their favor, and for the furtherance of the object of the act." In Massachusetts it was said : " The main purpose of the act, as its title indicates, is to extend the liability of employers, and to render them liable in damages for certain classes of personal injuries to their employees for which they were not liable at common law prior to the passage of the act. It does not attempt to codify the whole law upon the subject, nor to restrict the employees' right of action to the cases mentioned in the act. If he could have recovered before the passage of the act, he can also recover since its passage." *Ryalls v. Mechanics' Mills*, 150 Mass. 190.

In 1885 a similar statute based upon and copied from the English act was also adopted in Alabama, and the supreme court of that state, with reference to its object and purpose,

says : " It relates to a class of cases in which before no cause
of action existed, to a class of injuries the damages for which
at common law and under our statutes had been bartered
away before they accrued.  The statute was one of enlarge-
ment purely; no existing right was curtailed, limited, or taken
away.  The only limitations in the act were upon causes of
action created by the act, and having no existence outside
of it."

· The history of the legislation in Colorado bearing upon
this question is brief.  In 1872 it was enacted that when the
death of any person was caused by the wrongful act, miscon-
duct or omission of another, the personal representatives of
the decedent might maintain an action therefor against the
wrongdoer, if the decedent might have maintained an action
had he lived for the same act of misconduct, negligence or
omission; it being provided, however, that the damages should
inure to the exclusive benefit of certain relatives of the de-
cedent.  It was held that the damages to be awarded under
this statute were to be compensatory exclusively, and the
true rule for their ascertainment was said to be the probable
accumulations of the deceased during the remainder of his
life, having reference to his age, occupation, habits, bodily
health and ability.  *Railway Co. v. Lundin, Admr.*, 3 Colo.
104; *Railway Co. v. Woodward*, 4 Colo. 168.  In 1877 this
act was repealed, and a substitute enacted in its place, differ-
ing but slightly from the former act, however, except that
the recovery was limited to $5,000, and that the suit should
be instituted and prosecuted by certain designated relatives
of the deceased, and not by his personal representatives for
their benefit.  With reference to this statute, the supreme
court has uniformly held that the relief intended to be given
was compensatory in its nature, and that the true measure of
it was a sum equal to the net pecuniary benefit which plain-
tiff might reasonably have expected to receive from the de-
ceased in case his life had not been terminated by the wrong-
ful act, negligence or default of the defendant.  *Pierce v.
Connors*, 20 Colo. 182.  It will be seen that the measure of

damages in the two cases as laid down by the court was somewhat different. Under the old act, they were the estimated accumulations of the deceased during his expectancy of life, while under the later, and present existing act, it was the net pecuniary benefit which the plaintiff, the surviving relative bringing the suit, might reasonably have expected to receive from the deceased in case his life had not been terminated by the wrong of the defendant, not exceeding a certain maximum amount fixed by the statute. In the latter case, therefore, the amount to be received by the plaintiff is made largely, if not wholly, dependent upon the interest which the plaintiff had in the life of the deceased. In neither case was the defendant liable for the death as a substantive cause of action; in other words, it would seem that plaintiff would not be entitled to recover more than nominal damages at least, unless it appeared in some manner that the plaintiff had some pecuniary interest in the life of the deceased, and was or might become dependent upon him for some financial assistance or support. In other words, the damages allowed to be recovered were those sustained by the living plaintiff.

Under the statute, however, no right of action was given, and no recovery could be had under the law as declared by the courts by an employee for injuries to himself, nor by those having an interest in his life for loss of support in case of his death, where the injury or death resulted from the negligence of a coemployee, or from a cause held to be an incident to the employment, the risk of which the employee had assumed. This was also the case in Massachusetts, and to remedy this and give rights of action in such cases to some extent at least, was the primary object, purpose and intent, as declared by the Massachusetts courts, of the act from which our act of 1893 was taken. It was to create causes of action where under the settled judicial construction of the then existing law, there were none. As was aptly said by the supreme court of Alabama with reference to a similar act of that state: " The existing law was supposed to fall short of the attainment of justice, in that, and only in that, no action was al-

lowed for the negligence of a certain class of persons. The statutory purpose was to charge the master for the negligence of this class of persons in his employment in the same manner, under like conditions, and to the same extent as he was before charged for his own negligence, or that of superior employees." *Railway Co. v. Bradford*, 86 Ala. 579.

As to whether or not this was the legislative purpose and intent in the enactment of the statute of 1893, it is not necessary for this court in this case to determine. Nor, if such was the purpose, are we now called upon to inquire to what extent such purpose was effectuated. Nor is it incumbent on us to decide the mooted question as to whether or not the acts of 1893 and 1877 are *in pari materia*, and should be so construed. The issue here involved is not dependent upon and can be determined without the consideration of any of these questions. The title of the later act is decisive of this case. It is, "An act concerning damages sustained by agents, servants and employees." It is a most significant change from the title of the Massachusetts act from which it was taken, which was, "An act to extend and regulate the liability of employers to make compensation for personal injuries suffered by employees in their service." Such a radical difference is most persuasive evidence that the legislature of Colorado did not intend that the act should go to the extent of the Massachusetts act, as settled by the courts of that state. By no rules of construction, by no learning or ingenuity, can it be held that such a title as that of the Colorado act could embrace within its terms any provisions affecting the cause of action, right of action, the amount of recovery or procedure in the case at bar, or in similar cases. This action is not founded upon any damages sustained by either an agent, servant or employee, nor does it seek to recover any such. The damages sought to be recovered were those solely sustained and suffered by the plaintiff, who was neither an agent, servant or employee of the defendant. It is true that the damages accrued to her by reason of the death

of an employee, but they did not accrue to the employee, nor were they sustained or suffered by him.

Again, and as conclusive of this case, compelling a reversal of the judgment therein, section 21, article 5 of the constitution of the state provides that "No bill except general appropriation bills shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." It is clearly manifest, therefore, that this act of 1893 is obnoxious to this provision of the constitution, in so far as it attempts to regulate, restrict or in any manner affect actions like those at bar, to recover damages by one who was in no capacity in the employ of defendant. This provision of the constitution is held to be a mandatory declaration of a condition essential to the validity of a legislative enactment, and that portion of the statute not directly germane to the subject expressed in the title must be declared to be without force. *Railroad Co. v. People*, 5 Colo. 40; *People v. Fleming*, 7 Colo. 230; *People ex rel. v. Hall*, 8 Colo. 489. We must therefore hold that no part of the act of 1893 applies to or in any manner affects the right to recover, or the recovery of damages sustained by any person other than an agent, servant or employee of the party against whom a recovery is sought.

The complaint herein shows a complete cause of action and a right of recovery by plaintiff under the statute of 1877, which is not controlled or affected by the act of 1893. This action is based upon her interest in the life of the deceased, her direct dependence upon him as his mother for maintenance and support being alleged, and does not seek to recover any damages sustained by the deceased employee. Under the act of 1877 no notice was required to be given to the employer before such suit could be maintained, and it was therefore error to sustain a demurrer to the complaint on the ground of a failure to allege such notice.

In the determination of the important questions involved

in this case the court has received much assistance from the able and exhaustive briefs of counsel. Some questions which they have discussed have not been adverted to nor considered in this opinion. This was not through lack of appreciation of their importance, but because in the view which the court took of the controlling question these others were not necessary to our determination of the issue. The court has given to the case the careful deliberation and thorough investigation which its importance demands, and whilst in so doing it has steadily borne in mind the well-settled rule that statutes such as those under consideration should be liberally construed so as to carry out their purpose and intent, yet it feels none the less that its conclusions are in accord with the strict rules of law as announced by the highest judicial authority in this state, and are sound in principle.

The judgment is reversed, and the cause will be remanded for further proceedings in conformity with the views here expressed.

*Reversed.*