JENKS and another vs. THE CITY OF RACINE.

September 27 — October 12, 1880.

CITIES: *Contracts to build sidewalks: Liability of city to contractor.*

1. The city of Racine, under its charter, has power, on default of a lot-owner to build a sidewalk when duly ordered, to contract for building the same, either on terms that the contractor shall be paid at once out of the ward fund (the city to be reimbursed by special tax on the lot), or

on terms that the contractor shall receive a certificate of the special assessment, and await payment until it is collected by the city.

2. Where a sidewalk has been built under a contract of the character last mentioned, and the special tax has been returned delinquent to the county treasurer, and paid by him to the town treasurer in lieu of money (under sec. 6, ch. 26, Laws of 1877), the city does not become liable to the contractor for the amount, until the money due on the certificate is paid into the city treasury.

3. In such a case, if the city should either sell the tax certificate or collect the tax, it would be liable to account to the contractor; but what would be its liability in case it should take a tax deed on the certificate, is not considered.

APPEAL from the Circuit Court for *Racine* County.

Plaintiffs constructed certain sidewalks in the city of Racine under a written contract between them and the city; and they brought this action for $530.56, with interest at twenty-five per cent., alleged to be due them from the city. The case is more fully stated in the opinion. The court rendered judgment for the plaintiffs, from which the defendant appealed.

*John B. Winslow*, for the appellant.

*John T. Fish*, for the respondents.

COLE, J. The city agreed, in consideration that the plaintiffs performed the contracts on their part, to execute and deliver to them certificates of special assessments against the property chargeable with the expense of building the sidewalks. This was the express stipulation of the contracts. Now, as we understand the various provisions of the city charter as amended, the city had the option, or right, to cause the work to be done, paying for the same at once out of the ward fund, and wait until the special taxes were paid, for reimbursement; or to execute and deliver to the contractor certificates of special assessments, the contractor waiting until the taxes were paid, for his compensation. There is no pretense that the common council did not proceed regularly under the charter in ordering the work, and that the expense of the same was not a valid charge upon the property; nor is it

claimed that the common council has failed to execute and deliver the certificates just as it agreed to do. In our view, the city has strictly performed its contracts, and the plaintiffs must wait for their pay until the special tax has been received into the city treasury. The position, therefore, of the learned counsel for the plaintiffs, that under the contracts the money was due presently when the work was done, and was payable out of the ward fund in the first instance, we deem untenable. It will be noticed that the language in section 18, title 6 of the charter, upon which the counsel relies to sustain this view, is permissive; being, in substance, that in all cases mentioned in the four preceding sections, when the common council is authorized to do any work, or cause the same to be done at the expense of the adjoining property, such expense *may in the first place* be defrayed out of the ward fund. But this does not make it obligatory on the common council to make the payment in that manner. See *Whalen v. La Crosse*, 16 Wis., 271.

But the counsel further insists that the evidence shows that the special tax has been paid into the city treasury, within the meaning of the certificates of special assessments, and consequently the city is liable to refund the amount to the plaintiffs. It appears that no taxes on the lots chargeable with the expense of the work for the year 1878 were paid. The city treasurer returned the property as delinquent to the county treasurer, who sold the same to the county at the tax sales in May, 1879. The statute clearly gives the county treasurer authority to purchase the lots at the tax sale "for and on behalf of the county." Section 1143, R. S. But it appears that the tax certificates were afterwards transferred to the city treasurer, who now — as we suppose — holds them in trust for the benefit of the plaintiffs, to the amount of the special tax included therein. *Finney v. City of Oshkosh*, 18 Wis., 209. It is claimed, however, that because the tax certificates have come to the possession of, or are now held by, the city treas-

urer, they ought to be treated as so much cash in the city treasury, so far as the plaintiffs are concerned. Whatever force there might be under other circumstances in this view, it clearly cannot be maintained under the provisions of the city charter; for section 6, chapter 26 of the laws of 1877, makes it the duty of the county treasurer, where lots have been returned by the city treasurer for any delinquent tax, immediately after the sale of such lots, " to pay to the city treasurer the amount which may have been returned delinquent, belonging to said city, *either in cash or in certificates of sale of the lots or parcels of land returned as delinquent.*" Thus it will be seen that the city treasurer was bound to receive the tax certificates to the amount of the delinquent tax, if the county treasurer elected to pay him in that way. The city treasurer had no choice or discretion under the law but to receive the certificates; and, this being the case, it would be unjust and contrary to the policy of the charter to treat these certificates, as between the plaintiffs and the city, as so much cash in the city treasury. The economy or policy of the charter seems to be, that the city should not be liable for the amount of the special assessment before the money due upon the certificates is paid into the city treasury; and until the money is so paid the city holds the tax certificates merely in trust, for the purpose of receiving the tax from the owner of the lots. If the city should sell one of the tax certificates, or collect the special tax due upon it, of course it would be liable to account for it to the party entitled to receive it. *Finney v. Oshkosh, supra.* But we do not think it was the intent of the charter to make the city absolutely liable for the amount of the special tax as soon as the county treasurer transferred the tax certificate to its treasurer. What legal liabilities would follow in the event that the city should take a tax deed on the certificates, we need not now decide. It will be time enough to consider that question when it shall properly arise on the record. But, in the attitude of this case,

we think the judgment of the circuit court must be reversed, and the cause remanded with directions to dismiss the complaint, without prejudice to the plaintiff's right to bring another action for the amount of the special assessment when it has been received into the city treasury.

*By the Court.*— It is so ordered.