In re CRANBERRY CREEK DRAINAGE DISTRICT : JONES and others, Trustees, Appellants, vs. LA VIGNE, County Treasurer, and others, Respondents.

*May 12—June 11, 1930.*

The cause was submitted for the appellants on the brief of *Goggins, Brazeau & Goggins* of Wisconsin Rapids, and for the respondents on that of *B. M. Vaughan* and *M. S. King*, both of Wisconsin Rapids.

FAIRCHILD, J. The petition, to which a general demurrer was interposed, challenges the constitutionality of sec. 89.376, Stats., passed in 1927, and which reads:

"89.376 *Assessments paid in district securities.* Any landowner in a drainage district owning a bond, note or past-due interest coupon of said district, may offer the same to the town or county treasurer in payment of drainage taxes on specified lands in said district, and said town or county treasurer shall accept such bond, note or past-due coupon at its face value, plus accrued interest at the time of presentation in payment of such taxes. Such bonds, notes or coupons shall be received by the drainage district treasurer from the town or county treasurer as cash, and the drainage district treasurer shall credit the specified lands with the same. The excess, if there be any, of the bond, note or coupon over the amount of due and past-due drainage taxes on such lands shall be credited against future assessments against said lands."

The petitioners are the owners of eight negotiable coupon bonds of the Cranberry Creek Drainage District. Each is one of a large serial first issue of bonds duly issued April 1, 1907, by this drainage district to provide funds for the construction of a drainage system therein in anticipation of the collection of the several instalments of a special assessment against the benefited lands within said district.

The petition alleges that the bonds are past due and unpaid; that there are delinquent assessments outstanding in said district; that the petitioners are not landholders in the district; that there are other bonds to a large amount outstanding and unpaid; that the lands in the said district vary in quality and value; that there are assessments for benefits still in force in said district in excess of the assessments for construction. Each bond contains, among other provisions, the following:

"Both principal and interest hereof being payable in lawful money of the United States of America."

"Issued by said drainage district to provide funds for the construction . . . in anticipation of the collection of several instalments of a special assessment against the lands lying within said district."

". . . And that said series of bonds do not exceed in the aggregate the amount of said special assessment remaining uncollected and unpaid at the time of the issue thereof, and for the prompt collection of the several instalments of said special assessment and for the proper disbursement of the proceeds thereof to the payment of said bonds and the interest thereon, the full faith and credit of said district is hereby irrevocably pledged."

The question arises whether under sec. 89.376, Stats., the town treasurers in the towns in which the drainage district is located, and the county treasurers of Juneau and Wood counties, have any authority in law to accept such bonds, notes, or coupons in payment of drainage taxes on specified lands in said district.

The respondents admit that the district's financial condition is bad, as is shown by the petition, and will continue to grow worse by accumulation of interest if its interest-bearing obligations cannot be retired, and argue that the use of the bonds in paying assessments retires the used bonds and stops interest on bonds thus paid.

While this may be true it does not give due consideration to the fact that allowance of payment by bonds of the assessments pledged to the payment generally of all bonds takes from bondholders other than those using the bonds for that purpose security afforded by the lands on which the assessments were levied and the funds and credits belonging to them. As suggested in appellants' brief: "It goes without saying that if fifty per cent. of the lands in the district are good and fifty per cent. are worthless, the bonds used for redemption will be used to redeem the drainage certificates outstanding on the good lands and the improved land, leaving the bondholders whose bonds have not been used for redemption to collect their bonds only out of the poorer or worthless lands."

There is no misunderstanding about the source to which the bondholders must look for payment of their securities. The bond constitutes a lien upon the assessments. Any legislation which changes that source or affects the distribution and allotment of the avails of the assessment impairs the obligation of the bonds whereby the several instalments of special assessments are pledged for the benefit of all of the bondholders and whereby a proper disbursement of the proceeds is specially pledged to all bondholders.

Respondents insist that there are benefits yet unassessed for construction and that out of these assessments the bondholders may be paid. This is forcing the bondholder to accept a different method of obtaining his money from that which was promised and which induced him to make his in-

vestment. Even if the experience of the district gave any assurance that the additional assessments would be paid, the owner of the bond could not be compelled to accept the change. "Several general propositions are, however, settled so as to require in new cases merely their application. First and most primary among these is that an act which in any degree, no matter how slightly, modifies the obligation of the contract by attempting to relieve the one party from any duty by the contract assumed, is repugnant to the constitutional prohibition." *Oshkosh W. W. Co. v. Oshkosh,* 109 Wis. 208, 85 N. W. 376; *Dartmouth College v. Woodward,* 4 Wheat. 518.

Respondents' claim that sec. 89.376 does not modify the contract cannot be sustained. The purpose of the statute is to give landowners in the district an opportunity to offset bonds held by them against drainage assessments on their land, thus providing an advantage for this class of bondholders over the others who own no land in this district. The cases cited (*Keep v. Frazier,* 4 Wis. 224; *Pelton v. Crawford County,* 10 Wis. 69; *Marinette v. Oconto County,* 47 Wis. 216, 2 N. W. 314; *Finney v. Oshkosh,* 18 Wis. 209; *Jenks v. Racine,* 50 Wis. 318, 6 N. W. 818; *Oneida County v. Tibbits,* 125 Wis. 9, 102 N. W. 897; and *Amy v. Taxing District,* 114 U. S. 387, 5 Sup. Ct. 895) in effect sustain the petitioners' position, and in so far as they treat of orders or county certificates for tax-paying purposes hold that these may be used only where it is expressly provided. No such provision was made at a time when the bonds could in any way be affected. The bonds under consideration here are to be paid in cash.

The act referred to impairs the obligation of the petitioners' contract as represented by their bond and offends against sec. 10 of art. I of the Constitution of the United States and sec. 12 of art. I of the Wisconsin Constitution.

In setting aside particular assessments for the benefit of

particular bondholders, property of the petitioners is taken away from them contrary to law.

*By the Court.*—Order of the circuit court sustaining the demurrer is reversed, and the cause remanded with instructions to overrule the demurrer, and for further proceedings according to law.