STATE EX REL. MURPHY *v.* CHERRY.

4-3252

Opinion delivered January 22, 1934.

*Horace Sloan,* for appellant.

*Lamb & Adams,* for appellee.

*R. V. Wheeler, amicus curiae.*

McHANEY, J. Appellant, Francis A. Murphy, a large landowner and taxpayer within the limits of Big Creek Drainage District No. 15 of Craighead County, hereinafter called the district, brought this action for mandamus against appellee, Edward O. Cherry, as collector of revenue of Craighead County, to compel the collector to accept and receive overdue bonds and interest coupons of the district for the annual installment of drainage assessments due against his lands, and to issue his official receipt for said taxes. The district was made a party respondent to the petition. Appellees responded, denying the right of appellant to the writ, which the court sustained, and this appeal is from that order. The court found from the evidence adduced that the present market value of the lands embraced in the district, 47,421.62 acres, is less than the amount of outstanding indebtedness of the district on account of drainage improvement. This finding is supported by substantial evidence. A total of $310,000 in bonds was issued and sold by the district, bearing date January 2, 1918, with interest payable semiannually at 5½ per cent. per annum. Total assessment of benefits were made against the lands in the district of $801,789.43, which bears interest at 6 per cent. Only $46,000 in principal of the bonds has been paid, leaving a balance in principal of $264,000 and interest still unpaid. The district has been in default of its maturities, of both principal and interest, since 1928. Delinquencies in tax payments have increased greatly since 1927, and at this time approximately three-fourths of the lands in the district are delinquent for district taxes, and a large amount thereof has forfeited to the State for the nonpayment of State and other general taxes.

The Legislature of 1931 passed act 156, which provides: "The commissioners or collectors for drainage, levee and other improvement districts are authorized to and shall accept, at their face value, past-due bonds or past-due interest coupons issued by said improvement district as full payment for taxes or assessments as they

accrue, and shall be accepted by the commissioners and collectors in payment for lands or other property belonging to the district that may have been forfeited to the district for the nonpayment of taxes due on the same. Provided, however, that past-due bonds or past-due interest coupons may be accepted as part payment for taxes or assessments or forfeited property; the balance to be paid in cash, provided, further, that no bondholder, by tender of bond or bonds can purchase any land from the said district in smaller quantity than as described in any call at the time said land is originally assessed.''

The validity of this act is the basis of the principal contention in this case and this question has given us a great deal of concern. Appellee contends that it impairs the obligation of the contract between the district and its bondholders, and denies to the latter due process of law, in violation of both the State and Federal Constitutions, whereas appellant contends to the contrary, and that the right of set-off existed under the statute prior to 1918.

The county court, pursuant to the drainage statute, on December 30, 1918, [Crawford & Moses' Digest, § 3589] made an order providing for the issuance of bonds, times of payment, etc. Paragraphs E and F of this order are as follows: ''E. It is further considered, ordered and adjudged that, in order to meet the interest upon the said bonds and pay the principal thereof as it matures, there is hereby appropriated for that purpose, and set aside out of the first moneys received from the collection of each installment of the said tax assessed against the real property, including lands, railroads and tramroads within said drainage district, a sum sufficient to pay the interest and principal of the bond issue maturing during the year in which that installment of the said tax is due and payable, in accordance with and as shown on the schedule hereinbefore set out, or any bonds and coupons that may have already matured and yet remain unpaid.

''F. It is further considered, ordered and adjudged that no part of the funds arising from the collection of any of the said installments shall be applied or used for any other purpose than the payment of the interest and

principal of the said bonds until there has been deposited with the St. Louis Union Trust Company, in the city of St. Louis, and the State of Missouri, an amount sufficient to pay the interest and principal maturing during the year in which the installment is due and payable, as well as all other bonds and coupons already matured and remaining unpaid.'' The bonds themselves provided that principal and interest should be payable in gold.

The sections of the order above quoted are a part of the contract between the district and its bondholders. Section E appropriates from the first moneys received from the collection of each installment of tax, which had previously been assessed by order of the county court against the real property, a sum sufficient to pay bond maturities and interest of that year, or any past-due bonds and coupons. Section F goes still a step further and prohibits the use of said funds for any purpose, except the payment of principal and interest of said bonds, until there has been deposited with the St. Louis Union Trust Company a sum sufficient to pay principal and interest of bonds maturing during the year as well as past-due bonds and coupons. We think the necessary effect of the order was to require the payment of all bonds and coupons maturing during the taxable year, and all overdue bonds and coupons pro rata; that is, if the amount collected in any year should be insufficient to pay current and past-due bonds and coupons, the funds on hand should be applied thereto without discrimination. The undisputed fact is that the district is in default on bonds falling due from 1928 down to the present, and that the collections fall far short of yielding an amount sufficient to discharge bonds and coupons overdue. Therefore, if appellant is permitted to use overdue bonds and coupons to pay his assessment or tax on assessed benefits, he will receive a preference over bondholders who are not landowners or taxpayers in the district, which, as we have already shown, is violative of the terms of the contract. Past-due bonds and coupons, being on a parity with bonds and coupons maturing during any taxable year, are entitled to share ratably in the proceeds of collections made during such year. This is impossible if some of the landowners are permitted

to pay taxes with such bonds or coupons. A bondholder, who is not a landowner, is entitled to the same rights as a bondholder who is also a landowner.

Less than fifty per cent. of the land in the district is improved and in cultivation. The remainder is of very little value. If past-due bonds and coupons may be used to pay taxes, it is reasonable to presume that the valuable lands will be protected and the worthless lands allowed to become delinquent. In which event, the bonds left outstanding would be practically without security.

Viewed in any light, act 156 of 1931 permits the working of an inequality among bondholders, and therefore permits the impairment of the obligation of the contract between the district and its bondholders. In re *Cranberry Creek Drain. Dist.*, 202 Wis. 64, 231 N. W. 588; see also *Rorick* v. *Bd. of Commr's of Everglades Dr. Dist.*, 57 Fed. (2d) 1048. In *Oliver* v. *Western Clay Drain. Dist.*, 187 Ark. 539, 61 S. W. (2d) 442, we held that: "Taking a sufficient amount of assessments to replace the money wrongfully taken from the construction fund and paid to the purchasers of the bonds will not prevent the bondholders from getting their money. It will be simply taking from the assessments the amount of money paid to them that should have been paid to the contractors, and will not deprive them of anything to which they were entitled under the law. They still have a lien on all the assessments, and there is ample provision in the law to compel the collection of the assessments. Taking this fund (judgment against the district for construction work) out of the assessments collected will simply be returning to the construction fund the amount wrongfully taken from it, and will in no way reduce the amount that the bondholders are entitled to under the law." This holding is no authority for a bondholder-landowner to pay his taxes with past-due bonds.

Nor can we agree there was any right of set-off under existing law prior to 1918 as contended by appellant. Section 1197, Crawford & Moses' Digest, provides that: "A set-off may be pleaded in any action for the recovery of money and may be a cause of action

arising upon contract or tort." This is not an "action for the recovery of money." It is a mandamus action.

Many other arguments have been advanced by learned counsel for appellant, all more or less ancillary to the matters discussed. We find it unnecessary to review them as those herein considered are decisive of this case.

It follows from what we have said that act 156 of 1931 is unconstitutional and void, and that the judgment of the circuit court is correct, and must be affirmed. It is so ordered.

JOHNSON, C. J., and MEHAFFY, J., dissent.

JOHNSON, C. J., (dissenting). Few questions of greater importance than the one just decided have been submitted to this court for judicial determination in the past several years. I can not shut my eyes to the necessary implications of the majority opinion. Act 156 of 1931 has been struck down because of unconstitutionality. It is true that the virtues of this act should not save it; neither should its faults, if any, be invoked to accomplish its destruction.

In my humble opinion, act 156 of 1931 is a wholesome, constitutional and beneficial piece of legislation. It was promulgated, at a time when the world-wide depression was in its height and a world-wide business crisis of equal magnitude to that caused by flood, earthquake or other world-wide calamity. We can not and should not shut our eyes to the conditions as they are and were at the time of the enactment of this legislation. When this act was passed in 1931, thousands of people in this State were without employment and means of earning a living for themselves and their families; the value of income from all property situated in the State had practically vanished; these conditions produced the inevitable result of the loss of the homes of thousands of our people. On account of the many rivers and the vast quantities of low lands in this State, a large portion of the State's tillable lands are located within drainage and ditch districts. Sixty-two of the seventy-five counties of the State have within their boundaries road improvement districts which have outstanding bonds. More than $250,000,000 in outstanding bonds are

now in circulation against the various improvement districts within the boundaries of this State. The bonds of these various districts have been selling for the past several years, on the open markets, for as little as 25 cents on the dollar. It was to relieve this unfortunate situation and thereby enable the poverty stricken home-owner within these improvement districts to pay improvement district taxes that this legislation was passed. The constitutionality of this act should be measured by the actual authority reserved in the people, and not by imaginary constitutional restrictions. Section 1 of art. 2 of the Arkansas Constitution of 1874 provides: "All political power is inherent in the people, and government is instituted for their protection, security and benefit; and they have the right to alter, reform or abolish the same in such manner as they may think proper."

Thus it will be seen that, by constitutional mandate, all powers not expressly or impliedly prohibited by the Constitution are reserved in the people. This exact question was before this court in the early case of *State v. Ashley*, 1 Ark. 513, and this court there said: "A State Legislature can exercise all power that is not expressly or impliedly prohibited by the Constitution; for whatever powers are not limited or restricted they inherently possess as a portion of the sovereignty of the State."

The doctrine announced in *State v. Ashley*, has been consistently followed by this court up to the present time. I call especial attention to the cases of *Sims v. Ahrens*, 167 Ark. 557, 271 S. W. 720; *Barton v. Drainage Dist. No. 30*, 174 Ark. 173, 294 S. W. 418, and *Bush v. Martineau*, 174 Ark. 214, 295 S. W. 9. In each of these cases, this court expressly affirmed the doctrine announced in *State v. Ashley*, and made full application of its meaning and intent.

In addition to what I have just said, all acts of the Legislature are presumed to be constitutional and valid. *Patterson v. Temple*, 27 Ark. 202; *Leach v. Smith*, 25 Ark. 246.

Defining the rule differently, this court has said: "A statute will not be pronounced unconstitutional unless there is a clear incompatibility between the act and

the Constitution." *Eason* v. *State*, 11 Ark. 481. Stating the rule another way, this court has many times held: "All doubts should be resolved in favor of the constitutionality of a statute." *Duke* v. *State*, 56 Ark. 485, 20 S. W. 600; *Carson* v. *St. Francis Levee Dist.*, 59 Ark. 513, 27 S. W. 590; *Graham* v. *Nix*, 102 Ark. 277, 144 S. W. 214; *Ark. La. & G. R. Co.* v. *Kennedy*, 84 Ark. 364, 105 S. W. 885.

Expressing the rule in a little different language, this court has said: "The courts should exercise their power of declaring an act of the Legislature void because in conflict with the Constitution with great caution, and only when the terms of the Constitution have been plainly violated." *State* v. *Moore,* 76 Ark. 197, 88 S. W. 881. And again: "A statute will not be declared unconstitutional unless no doubt exists on the question.". *Stillwell* v. *Jackson*, 77 Ark. 250, 93 S. W. 71.

Thus it will be seen that before this court is authorized to declare act 156 of 1931 unconstitutional and void, it must appear, beyond doubt, that the same is in violation of some mandate of the Constitution. It is my view that no such antagonism prevails between the act in question and constitutional mandate. The majority opinion holds that act 156 of 1931 violates § 10 of article 1 of the Constitution of the United States and § 17 of article 2 of the Arkansas Constitution of 1874, which provide against the impairment of the obligations of contract. It seems to be the intention of the majority to hold that, since the trial court has found, from evidence adduced, that the present market value of lands embraced within the improvement district is less than the amount of outstanding indebtedness against the district, act 156, giving landowners a right not enjoyed by non-landowners thereby impairs the obligations of contract. This is not the correct test.

The solvency or insolvency of this improvement district cannot and should not be determined in this proceeding. No receivership has been applied for or granted, and this district should be treated as conclusively solvent in this collateral proceeding.

Big Creek Drainage District No. 15 of Craighead County was organized in 1917, under the authority of act 279 of 1909 and amendatory acts thereto. Section 7 of the act provides: "Said commissioners shall proceed to view the lands within the district, and shall inscribe in a book the description of each tract of land, and shall assess the value of the benefits to accrue to each tract by reason of such improvement, and shall enter such assessment of benefits opposite the descriptions, together with an estimate of what the landowner will probably have to pay on said assessment for the first year. Their assessment shall embrace, not merely the land, but all public or corporate roads, railroads, tramroads and other improvements on lands that will be benefited by the drainage system. They shall place opposite each tract of land the name of the supposed owner, as shown by the last county assessment; but a mistake in the name shall not vitiate the assessment."

The assessment of benefits in this district were made in conformity with the section quoted. The assessment of benefits so made is not against the whole district, but is against each separate tract of land and the aggregate or total assessment against the 47,421.62 acres is $801,-789.43, which assessment of benefits bears interest at the rate of 6 per cent. per annum. The bondholder knew when he purchased his bonds that the assessment of benefits was against each separate tract of land, and, of course, he purchased subject to this assessment. This is made certain by § 3606 of Crawford & Moses' Digest, which provides: "Any person or corporation, co-partnership or other parties owning lands assessed for the construction of any ditch or other improvement under the provision of this act shall have the privilege of paying such assessment to the treasurer at any time before the bonds therefor are issued."

This section gave definite notice to the bond purchaser that the landowner had the right to pay off the assessment of benefits against any separate tract of land, as determined by the board of commissioners. I therefore assert that the rights of the bond purchaser should be measured by the assessment of benefits against the several tracts of land in the improvement district and

not by the aggregate assessments against all the lands in the district. I also assert that neither the trial court nor this court has any right to take into consideration the present market value of the lands situated in this district for the purpose of determining the constitutional question here presented. The bondholder purchased his bonds on the faith of the assessment of benefits which were expected to accrue to the landowner by reason of the improvement and not upon the intrinsic value of the lands. The present holding of the court, when carried to its logical conclusion, will inevitably take from the landowners in all improvement districts in this State their last vestige of inheritance. The effect of the majority holding is that each tract of land stands as surety for each other tract in the district. I assert that this is not and should not be declared the law.

The prohibition against impairment in our Constitution of 1874 is identical with that in the Federal Constitution. In *Antoni* v. *Greenhow*, 107 U. S. 769, 2 S. Ct. 91, the Supreme Court of the United States held on the question of impairment: "In all such cases the question becomes, therefore, one of reasonableness, and of that the Legislature is primarily the judge." The same court held in *Sturges* v. *Crowninshield*, 4 Wheat. 122, that the obligations of contract are impaired only by a law which renders them invalid, or releases or extinguishes them. In *West River Bridge* v. *Dix*, 6 How. 507, the same court held that the State's right of eminent domain was a reservation in all contracts, and that such reservation was deemed a part of the contract. Neither does legislation regulating the public health or the public morals impair the obligations of contract. *Douglas* v. *Kentucky*, 168 U. S. 488, 18 S. Ct. 199.

Legislation to protect the public safety falls within the reserved power of the respective States and therefore does not impair the obligations of contract. *C. B. & Q. R. Co.* v. *Nebraska*, 170 U. S. 57, 18 S. Ct. 513; *T. & N. O. R. R. Co.* v. *Miller*, 221 U. S. 414, 31 S. Ct. 534.

Similar to the question now under consideration, the Supreme Court of the United States held, in *Manigault* v. *Springs*, 199 U. S. 473, 26 S. Ct. 127, that the economic interests of the State may justify the exercise of its con-

tinuing and dominant protective power, notwithstanding interference with contractual obligations.

All doubts about the reserved and protective powers of the several States were removed by the decisions of the Supreme Court of the United States in the recent cases of *Home Building & Loan Ass'n* v. *Blaisdell*, 290 U. S. 398, 54 S. Ct. 231; *Block* v. *Hirsh*, 256 U. S. 135, 41 S. Ct. 458; *Brown Holding Co.* v. *Feldman*, 256 U. S. 170, 41 S. Ct. 465; *Edgar A. Levy Leasing Co.* v. *Siegel*, 258 U. S. 242, 42 S. Ct. 289.

Chief Justice HUGHES, who handed down the opinion in *Home Building & Loan Ass'n* v. *Blaisdell*, cited *supra*, said: "Undoubtedly, whatever is reserved of State power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other. This principle precludes a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. But it does not follow that conditions may not arise in which a temporary restraint of enforcement may not be consistent with the spirit and purpose of the constitutional provision and thus be found to be within the range of the reserved power of the State to protect the vital interests of the community."

The right of set-off created by act 156 of 1931 does not alter or impair the medium of payment, but only has to do with the remedy of enforcement. *Amy* v. *Taxing Dist. of Shelby County*, 114 U. S. 387, 5 S. Ct. 895.

Legislation giving a more efficient or additional remedy upon a prior contract does not impair its obligations. *Bernheimer* v. *Converse*, 206 U. S. 516, 27 S. Ct. 755.

Moreover, it has been definitely determined by the Supreme Court of the United States that the right of set-off is a benefit to bondholders and not a detriment. *Woodruff* v. *Traphall*, 10 How. 190; *Hartman* v. *Greenhow*, 102 U. S. 679; *Poindexter* v. *Greenhow*, 114 U. S. 270, 5. S. Ct. 903; *Keith* v. *Clark*, 97 U. S. 455.

Act 156 of 1931, when measured by the tests heretofore enumerated, is a valid exercise of reserved power and does not fall within the prohibitions of either the State or Federal Constitutions.

The majority opinion seems to hold that act 156 of 1931 discriminates in favor of landowners of the district and against non-landowners, therefore impairs the obligations of the contract. The act produces no such result. The bondholder has the right to purchase lands in the district, thereby becoming both a landowner and a bondholder, just as certainly as the landowner may purchase bonds and thereby become a bondowner and landowner. I cannot conceive just how this discriminates. Neither bondowner nor landowner is required to alter their positions except as they may elect, and I know of no rule of law holding this to be discrimination. The majority opinion further holds, "Less than 50 per cent. of the lands in the district are improved and in cultivation. The remainder is of very little value," etc. Just what this has to do with impairment I cannot see. As heretofore shown, the bondowner bought upon the faith of the assessment of benefits. Evidently the lands were not improved nor in cultivation when the bonds were purchased. But suppose they were, the fact that the lands have passed from a state of cultivation to one of wildness is no fault of the landowners who have stunted and starved themselves in an endeavor to keep their lands in a state of cultivation and pay the heavy taxes against the same yearly.

The fact, if it be such, that 50 per cent. of the lands in the district are wild and unimproved is as much the fault of the bondholder as that of the present owner of improved and cultivable lands in the district, and I see no justice in penalizing the one in favor of the other.

The Wisconsin case of In re *Cranberry Creek Drainage Dist.*, 202 Wis. 64, 231 N. W. 588, has no application to the facts of this case. The question of reserve power in the State was not considered or decided. No analogy is shown in the respective statutes creating the districts. Certainly the Wisconsin case should not be considered as controlling in the instant case.

The majority cite *Oliver* v. *Western Clay Drainage Dist.,* 187 Ark. 539, 61 S. W. (2d) 442, as supporting the opinion. Just how this conclusion is reached is beyond my powers of comprehension. The Oliver case is squarely against the present holding. In the Oliver case, although not so shown in this court's opinion as reported, Oliver was permitted to set off his attorney's fee against past-due taxes. The improvement district prosecuted a cross-appeal bringing in question this set-off, and counsel there, as here, urged that this allowed set-off impaired the obligations of contract, but we affirmed the cross-appeal. Just how an attorney's fee may be set off and deny the right to a bondholder is not pointed out in this opinion. It occurs to me that the holdings are inconsistent. The profession may distinguish if they can.

The judgment should be reversed and remanded.

Mr. Justice MEHAFFY concurs in this dissent.