## SALTER v. NELSON, County Treasurer.

No. 5616.   Decided January 8, 1935.   (39 P. [2d] 1061.)

*Dey, Hoppaugh, Mark & Johnson,* of Salt Lake City, for plaintiff.

*Hammond & Thatcher,* of Bountiful, *Homer Holmgren,* of Salt Lake City, for defendant.

ELIAS HANSEN, Justice.

Plaintiff has filed a verified petition praying that an alternative writ of mandate issue out of this court directing the defendant to receive bonds and interest coupons of the Bonneville Irrigation District and to issue therefor a receipt discharging the lands of petitioner from future levy of taxes and assessments for the payment of the bonds of the district or that he show cause why he has not done so. In response to the writ, defendant demurred to the petition upon the grounds that it fails to state a cause of action. At the time of the oral argument, it was stipulated by counsel for the respective parties that the allegations of the petition are admitted to be an accurate statement of the facts, not only for the purpose of the demurrer, but also for the purpose of disposing of the cause on merits.

The sole question which divides the parties involves the constitutionality of, or the construction which should be given to, chapter 68, p. 90, § 20, Laws of Utah 1929. The facts out of which this controversy arose are as follows: The Bonneville Irrigation District was organized in 1920 under the provisions of chapter 68, Laws Utah 1919. In 1920 the district issued and sold bonds in the amount of

$600,000. Such bonds were in ten series of different dates of maturity, one-tenth thereof maturing December 1, 1931, and one-tenth maturing December 1st of each year thereafter to and including December 1, 1940. All of the bonds so issued and sold were of the denomination of $1,000 each and bore interest at the rate of 6 per cent. per annum payable on the first day of June and December of each year. In 1921, additional bonds of the district were issued and sold in the sum of $125,000. Such bonds were issued in ten series of different dates of maturity, one-tenth thereof maturing on December 1, 1932, and one-tenth thereof maturing on the first day of December of each year thereafter to and including the first day of December, 1941. All of the second issue of bonds are of the same denomination and bear the same rate of interest as the first issue.

Plaintiff is the owner of four tracts of land within the Bonneville Irrigation District. In order to pay his proportion of the total issue of bonds of the district based on the proportion of his water allotments to the final water allotments of the district, petitioner must pay $1,143.50 on each of two tracts of land, $923.36 on one tract of land, and $2,503.48 on the other tract, making a total of $5,713.84 for the four tracts of land so owned by him. It is further alleged in the petition:

"That on the 20th day of September, 1934, your petitioner, pursuant to section 20, chapter 68, p. 90, Laws Utah 1929, and as such land owner tendered to the respondent as County Treasurer of Davis County, and ex-officio district treasurer of said Bonneville Irrigation District, bonds of said district, one-third of the principal amount of said bonds so tendered maturing December 1, 1931, one-third maturing December 1, 1936 and the remaining one-third of said bonds so tendered maturing December 1, 1937, all with interest to maturity dates of said bonds. That the said bonds so tendered equalled and were in amount equal to the proportion of your petitioner, as land owner holding and owning the four tracts of land hereinbefore described, of the total issue of bonds of the District, with interest at 6% per annum to the maturity date of said bonds, all based on the proportion of said land owner's several water allotments to the total final water allotment of the District. That upon making said tender

your petitioner demanded of said respondent, as such County Treasurer of Davis County, Utah and ex-officio District Treasurer of said Bonneville Irrigation District, that he receive the said bonds and coupons of said district so tendered in payment of your petitioner's proportion, as such land owner, of the total bonds of the district with interest to maturity of said bonds,—to the end that the lands above described be relieved and discharged from all further taxes for the payment of the bonds, or interest on the bonds, of the said District. So that no taxes for the payment of bonds or interest on the said bonds of the said District should thereafter be levied against your petitioner, as such land owner, or against the land hereinbefore described.

"That the said respondent refused said tender and demand and refused to receive the said bonds and coupons in payment of said taxes upon the sole ground and for the sole reason that he claimed and asserted that the provisions of section 20, chapter 68, p. 90, Laws Utah 1929, are unconstitutional and in violation of the Constitution of the State of Utah."

The Bonneville Irrigation District was organized and all of the bonds involved in this controversy were issued and sold pursuant to the provisions of chapter 68, Laws of Utah 1919. The act provides for the organization of irrigation districts and for the allotment of water to lands therein. When final allotments of water are made to the lands within a district, such final allotments are by the act made the basis for all assessments levied to secure funds for the district. Section 14 of the act provides for the issuance of such bonds as may be necessary for acquiring water rights, canals, reservoirs, etc. If the original issue is insufficient, additional bonds may be issued, in which event the original bonds "shall be a prior lien to that of any subsequent bond issue."

Section 16 provides that bonds and interest thereon issued and sold by the district shall be paid by revenue derived from annual assessment on the real property of the district, and that the property of the district shall be and remain liable to be assessed for such payments.

Section 17 makes it the duty of the board of directors on or before March 1st of each year to determine the amount of money that will be required to meet the obligations of

the district for the current year including such amount as will be necessary to pay interest on all outstanding bonds and the principal of all maturing bonds of the district, together with such additional amounts as may be necessary to meet any deficiency theretofore incurred.

Section 18 makes it the duty of the county assessor to assess the lands within the district on the basis of value per acre foot on the water allotted to the land and to make return thereof to the county commissioners.

Section 19 makes it the duty of the county commissioners to levy an assessment on the lands within the district to provide the amount of money required by the district plus 15 per cent to cover delinquencies.

Section 20 makes the county treasurer of the county in which the office of an irrigation district is located ex officio the treasurer of the district. He is required to collect, receive, and receipt for all moneys belonging to the district, and

"shall receive in payment of the district bond fund taxes above mentioned for the year in which said taxes were levied, interest coupons or bonds of said irrigation district maturing within the year the same as so much lawful money of the United States, if such interest coupons or bonds do not exceed the amount of district bond fund tax which the person tendering the same owes."

In 1929, section 20 of the Laws of Utah 1919, chap. 68, was amended by adding thereto the following provision:

"Any land owner may tender and the county treasurer shall receive money or bonds and/or coupons of the district equaling such land owner's proportion of the total issue of bonds of the district, with interest to maturity, based on the proportion of the land owner's water allotment to the total final water allotment of the district, and taxes for payment of the bonds or interest on the bonds of the district shall not thereafter be levied against such land owner," Laws 1929, c. 68, p. 90, § 20.

This controversy is concerning the effect, if any, which may be given, within constitutional limitations, to the addition made to the original act by the amendment of 1929 above quoted. It is defendant's contention that the amend-

ment may not be given any effect because it impairs the contract theretofore entered into between the Bonneville Irrigation District, the landowners of the district, and the purchasers of the bonds of the district. He contends that the amendment, if given effect, would impair such contract in the following particulars: (1) By favoring a bondholder who owns land within the district to the disadvantage of a bondholder who is not a landowner; (2) by permitting a landowner who is also a bondholder to anticipate and to discharge his future assessments and thus prevent his land from being assessed for the use and benefit of the remaining bondholders; (3) by allowing a land and bondholder to pay all of his bond fund tax obligations with bonds not yet matured and thereby make it impossible for the district to pay its bonds at maturity; and (4) by relieving the landowner who pays his total obligations on the bonds of the district from the payment of the 15 per cent which, under the act of 1919, must be added to cover delinquencies.

Petitioner contends that the effect of the amendment of 1929 is not to impair the obligation of the bonded obligation of the district, but is merely to change the remedy given by the act of 1919 for collection of money owing upon the outstanding bonds and hence is not open to the objection urged by defendant.

It is well settled that the act of 1919 entered into and became a constituent part of the contract for the payment of the bonds involved in this controversy. The rights of the Bonneville Irrigation District, of the property owners therein, and of the bondholders thereof are to be measured by the standard of chapter 68, Laws of Utah 1919. If the amendment of 1929 may be said to merely change or limit the remedy which was made available to the bondholders by the act of 1919 for the enforcement of the obligation to pay the bonds, then and in such case the amendment of 1929 does not offend against the constitutional provision prohibiting the impairment of a contract. If, however, the effect of the amendment of 1929

was to take away all remedies for, or seriously interfered with, the enforcement of the obligations of the bonds in question, then the amendment is unconstitutional notwithstanding it may act solely upon remedy. *Straus* v. *Ketchen* (Idaho) 28 P. (2d) 824; *Hershey* v. *Cole,* 130 Cal. App. 683, 20 P. (2d) 972; *Howard* v. *State,* 226 Ala. 215, 146 So. 414; *In re Cranberry Creek Drainage Dist.,* 202 Wis. 64, 231 N. W. 588, 85 A. L. R. 242; *People* v. *Hall,* 8 Colo. 485, 9 P. 34; *Rorick* v. *Board of Commissioners* (D. C.) 57 F. (2d) 1048; *Gibbons* v. *Hood River Irrigation Dist.,* 66 Or. 208, 133 P. 772; *State* v. *Cherry,* 188 Ark. 664, 67 S. W. (2d) 1024; *Kirkman* v. *Bird,* 22 Utah 100, 61 P. 338, 58 L. R. A. 669, 83 Am. St. Rep. 774; and *Salt Lake Elec. Sup. Co.* v. *West,* 54 Utah 564, 182 P. 215. To the same effect is 6 R. C. L., §§ 314, 317-321, pp. 325-330, and cases cited in footnotes. It should here be noted, parenthetically, that petitioner has cited the case of *State* v. *Blake* (Utah) 20 P. (2d) 871, in support of his position. No constitutional question was raised in that case. Moreover, that case is still pending on a petition for rehearing and therefore that opinion is not an authority.

In our discussion of the various objections urged against the constitutionality of the amendment of 1929, it is necessary to keep in mind certain elementary rules of statutory construction among which are: That when the validity of a statute is assailed upon constitutional grounds and there are two possible constructions by one of which the statute would be rendered unconstitutional and the other valid, the court should adopt the latter construction. A corollary to the general rule just stated is that when the provisions of a statute are broad enough to cover matters without, as well as within, the jurisdiction of the legislative body, it is the duty of the courts to restrict its application to the legitimate field of legislation unless the statute clearly indicates a different legislative intention. 6 R. C. L. §§ 77, 78, pp. 79 80. Another rule of uniform application is that, when possible, effect must be given

to each and all of the provisions of a statute. With these rules of statutory construction in mind, we shall proceed with a discussion of the various grounds urged against the validity of the amendment of 1929. It will be observed that Laws of Utah 1919, chapter 68, unlike the statutes involved in the cases cited and relied upon by respondent permit a landowner to pay and direct the county treasurer to receive interest coupons or bonds of the district maturing within the year the same as so much lawful money of the United States. Thus, a landowner, who also owns bonds of a district, is by the act expressly given the right to pay his district bond fund taxes with interest coupons or bonds maturing within the year within which such tax is levied. The landowners having under the act of 1919 the right to pay their district bond fund taxes with maturing interest coupons or bonds, such right may not be denied them merely because no such means of securing payment of interest coupons and bonds is accorded to bondholders who are not landowners. Bondholders who are not landowners hold their bonds subject to the rights conferred by the act upon bondholders who are landowners. The rights of all bondholders and landowners are measured by the provisions of the act of 1919. It was competent for the Legislature to confer upon landowners the right to pay their bond fund tax with bonds and interest coupons. Those who purchased bonds of the district under a given law may not be heard to complain because their rights are fixed and limited by such law.

But it is urged by defendant that by the amendment of 1929 the legislature enlarged the rights of bondholders who are also landowners to the injury of the district, of other bondholders, and of other landowners who are not both landowners within and bondholders of the district. If the provisions of the amendment of 1929 be limited in their application to interest coupons and bonds which have reached maturity and to a proper proportion of each bond issue, we are unable to perceive how the rights of the district, of any landowners within, or bondholders

of the district, are infringed. While the act before the amendment provided merely for the payment of the bond fund tax with bonds or interest coupons maturing within the year, it would be an unwarranted construction of the act to hold that the bond fund tax of a given year could not be paid with interest coupons or bonds that were past due. Doubtless the framers of the act anticipated that irrigation districts would meet their obligations as they matured. It would seem reasonably clear that the purpose sought by the Legislature was to avoid the necessity of a landowner who also owned interest coupons or bonds maturing within the year from first paying his bond fund tax in money and then presenting his maturing coupons or bonds for payment and recovering back his tax money in payment thereof. It is evident that the same results may be accomplished in one transaction, viz., by paying the tax with interest coupons or bonds. If bond fund taxes levied in a given year may be paid with interest coupons or bonds maturing within the year, it is difficult to perceive that the law-making power could have intended otherwise than that such tax could likewise be paid with past-due interest coupons or bonds. The only reasonable construction to be given to the words "maturing within the year" is that the landowner may pay his bond fund tax with interest coupons or bonds which have matured or which shall mature within the year in which such taxes are payable. It is unreasonable to assume that the Legislature intended to give maturing bonds and interest coupons priority over matured bonds and interest coupons. In a sense, the latter are included within the former.

It will also be observed that the act of 1919 contains a further limitation upon the right of a landowner to pay his bond fund taxes in maturing interest coupons or bonds. The act provides that the bond fund taxes may be so paid if such interest coupons or bonds do not exceed the amount of district bond fund tax which the person tendering the same owes. The same provision is con-

tained in the amendment of 1929, with the additional provision here in question. The language of the amendment is susceptible of the construction that the lawmaking power intended to permit the landowner in an irrigation district to relieve his land from all obligations to the bondholder thereof by the payment of the required amount in interest coupons or bonds whether the same are of the first or a later issue, and, likewise, whether the same have or have not reached maturity. The language of the amendment, however, does not require such a construction. If the language of the amendment be given so broad a meaning, then and in such case the amendment offends against those provisions of our State and Federal Constitutions which prohibit the enactment of a law which impairs the obligation of a contract. The Bonneville Irrigation District has made two issues of bonds, the first in the sum of $500,000, the second in the sum of $125,000. Both issues were made pursuant to the act of 1919 which contains a provision that prior issues of bonds "shall be a prior lien to that of any subsequent bond issue." If the amendment of 1929 be construed to mean that the prior lien therein given to the holder of the first issue of bonds of the district may be discharged by the payment of the required amount of interest coupons or bonds of the second issue, clearly the holders of the bonds of the first issue will be deprived of a substantial right, viz., the right to have each tract of land within the district bear its portion of the obligation incurred by the first bond issue. The discharge of a lien on a tract of land by the surrender of bonds or interest coupons of the second issue would, to that extent, reduce the security of the bondholders of the first issue. It was beyond the power of the Legislature to, in effect, destroy the prior lien of the bondholders of the first issue. In reaching such conclusion, we have not overlooked that provision of the original act wherein it is provided that the "County Treasurer shall receive in payment of the district bond fund taxes above mentioned for the year in which said taxes were

levied, interest coupons or bonds of said irrigation district maturing within the year the same as so much lawful money of the United States, if such interest coupons or bonds do not exceed the amount of district bond fund tax which the person tendering the same owes." Standing alone, the foregoing provision seems to permit a landowner to pay his district bond fund tax with any interest coupons or bonds without regard to whether the same are of the first or a subsequent issue. Such a construction, however, would offend against the rule that, when possible, effect must be given to each and all of the provisions of the statute. To so construe the provision last above quoted as to permit a landowner to pay his proportion of a prior bond issue with interest coupons or bonds of a subsequent bond issue would be to disregard that provision of the statute which makes the first issue "a prior lien to that of any subsequent bond issue." That may not be done. A landowner who desires to avail himself of the right to pay in other than money that proportion of his district bond fund tax which has been levied for the purpose of paying a particular bond issue must pay in interest coupons or bonds of that issue. To permit a landowner to do otherwise would be to deny to the holders of the bonds of the first issue their prior lien. Moreover, a tax levied for the payment of one issue of bonds may not be used for the payment of some other issue. The bondholders of each issue are entitled to have the taxes levied for the purpose of paying their bonds and the interest thereon applied to such purpose and not otherwise. To construe the Irrigation District Act of 1919 otherwise would be to fail to give effect to some of its provisions.

For similar reasons, taxes which are levied for the payment of interest coupons or bonds due or which become due within the year for which such taxes are levied may not be diverted to the payment of interest coupons or bonds which have not and will not reach maturity until after the year in which the taxes are levied. By the act of 1919, the board of directors are directed on

or before March 1st of each year to determine the amount of money required for the current year to pay interest on all maturing installments of principal of any bonds and to certify such amounts to the county commissioners. It then becomes the duty of the county commissioners to levy a sufficient tax to raise the required amount of money, together with 15 per cent to cover delinquencies. No change was made by the amendment of 1929 with respect to the amount, the purposes, or the manner of levying taxes. If the amendment of 1929 be so construed as to permit landowners to pay their annual district bond fund taxes with interest coupons or bonds maturing later than the current year, and if any considerable number of landowners so paid their current taxes, obviously, the district will be short of funds with which to pay its matured or maturing bonds. The effect of such a construction of the amendment of 1929 would be to require the district to pay obligations not yet due with taxes levied for the purpose of paying its current and past-due obligations and thus making it impossible for the district to pay the latter obligations. Such a construction of the amendment would in our opinion render it unconstitutional. The obligation assumed by the district when it sold its bonds must be measured by the standard of the law as it then existed, viz., that the district would annually levy taxes for the payment of the bonds and interest thereon when due and to apply the taxes thus collected to the payment of the bonds and interest that were matured or would mature within the year when such taxes are levied. To permit the district to escape its obligations in such respect would be an impairment of its contract, particularly with respect to those who hold matured or maturing bonds. It will be noted that the language of the amendment of 1929 standing alone is broad enough to admit of the construction that a landowner may pay his proportion of the total bond issue without regard to the maturity date of the bonds. There is, however, no language in the amendment which demands such a construction. Moreover, other provisions

of the act which are not changed by the amendment of 1929 indicate a legislative intent that a landowner may pay his bond obligation only with interest coupons or bonds which have matured or which will mature during a current year in which taxes are levied. Thus the levy authorized to be made in any given year is such an amount as will be necessary to pay the current matured or maturing obligations of the district. That provision of the act which permits payment of the annual bond fund taxes with maturing interest coupons or bonds is out of harmony with such a construction of the amendment of 1929 as would permit a landowner to pay, not only his current year bond fund taxes, but also all future bond fund taxes unmatured bonds of any issue. In this connection, a further pertinent inquiry is: May the lawmaking power enact a valid law permitting a landowner to pay his portion of the bonded indebtedness of a district with matured or maturing interest coupons or bonds and thereby relieve his land from the payment of further bond fund taxes or does such a provision impair contractual obligations? The original act permitted a landowner to apply interest coupons or bonds to the payment of his bond fund taxes "if such interest coupons or bonds do not exceed the amount of district bond fund tax which the person tendering the same owes." The amendment of 1929 contains the same provision with the additional provision here in question. In a sense, the additional provision in the amendment of 1929 enlarges the right of a landowner by permitting him to pay not only bond fund taxes which are due but also bond fund taxes which may thereafter be levied. The apparent enlargement, by the amendment, of the landowner's rights, however, is without substance and such enlargement does not impair the rights of any of the other parties to the bond issue. The district may not be heard to complain because an additional means is provided to force it to pay in money or credit its matured obligations. Nor can we perceive how other bondholders or landowners can be injured by a landowner paying with matured interest

coupons or bonds the total amount of bond fund taxes that may be levied against his land. A landowner who surrenders matured interest coupons or bonds equal to the full amount that his land may be taxed for the bond fund of the district thereby relieves the district from paying interest on the interest coupons and bonds so applied. Such a saving is to the advantage of the district and indirectly to other landowners and bondholders of the district. The payment of a tax before it is due may not well be said to be prejudicial to either the district or the landowners therein or the bondholders thereof.

The amendment is calculated merely to enable a landowner to pay his bond fund taxes before they become due. No substantial right of any of the parties to a bond issue is affected by the amendment if it be construed, as we think it should, as applying only to matured and maturing interest coupons and bonds. So limiting the amendment, in effect, merely affords a landowner an additional remedy against the district for enforcing the payment of its matured obligations. We are thus of the opinion that in order to uphold the validity of the amendment of 1929, and in order to give effect to the whole of the act, the amendment should be so construed as to require a landowner who desires to relieve his land from future levy of bond fund taxes to pay his proportion of the total of the first bond issue with matured bonds or interest coupons of that issue, and, likewise, to pay his proportion of the total of any subsequent bond issues with matured bonds or interest coupons of such subsequent issue.

It is further urged by defendant that the amendment of 1929 is unconstitutional in that it attempts to relieve landowners, who are able to and do pay their portion of bond fund taxes, from paying an additional 15 per cent to cover delinquencies. The claim is made by defendant that under the law as it was when the bonds of the district were issued, the bondholders acquired a lien on the land within the district, not only for the water allotted to

each tract of land, but in addition thereto 15 per cent thereof to cover delinquencies. Petitioner contends that the provision requiring the county commissioners to levy 15 per cent to cover delinquencies does not apply to bond fund taxes. It is pointed out that if 15 per cent be added to the bond fund tax, the levy will exceed the amount of the outstanding bonds. In support of his position, petitioner cites the cases of *Interstate Trust Co.* v. *Montezuma Valley Irrigation Dist.*, 66 Colo. 219, 181 P. 123, and *Board of County Commissioners* v. *Heath*, 87 Colo. 204, 286 P. 107. A comparison of the provisions of the statute of Colorado which the Supreme Court of that state construed in the foregoing cases with the provisions of the act here under review reveals a marked difference between the two statutes. Under our law it is made the duty of the board of commissioners of a drainage district to determine the amount of money required for the current year to meet various enumerated expenses of the district, including such an amount as will be necessary to pay maturing interest and principal of the bonds of the district. The board of county commissioners are then directed by the act to make a levy to raise the necessary amount and that "the rates of levy as above determined shall be increased 15 per cent to cover delinquencies." Section 19. To hold that the language just quoted does not apply to taxes levied for the payment of interest and bonds would be unwarranted. The amendment of 1929 did not change the act of 1919 with respect to the mattter in hand. That the provision requiring an increase of 15 per cent to cover delinquencies is not unconstitutional was expressly held by this court in the case of *Stevens* v. *Melville*, 52 Utah 524, 175 P. 602. When 15 per cent has been levied to cover delinquencies, a landowner may not be further assessed to pay his pro rata share of delinquencies of other landowners in previous years was held in the case of *Nelson* v. *Board of Commissioners of Davis County*, 62 Utah 218, 218 P. 952. If the amendment of 1929 be so construed that a landowner may relieve his land from the payment of

476

future bond fund taxes by paying his proportion of the total bond issue of the district and without paying 15 per cent to cover delinquencies, it necessarily follows that by so doing such a landowner would derive an advantage not accorded to a landowner who is compelled to pay his annual bond fund taxes as they are levied. The effect of the act before the amendment of 1929 was to give bondholders security on each tract of land within the district equal to 115 per cent of the proportion of each landowner's obligation. Obviously, a release of a tract of land by the owner thereof paying only his proportion of the bonds issued would tend to impair the security of bondholders who had not been paid. Such a construction of the amendment would result in its being unconstitutional. If, however, the language of the amendment admits of such a construction that a landowner must pay his proportion of the bond issues of the district and an additional 15 per cent before his land is freed from further levy of bond fund taxes, we can perceive of no good reason why the amendment may not be held valid.

It will be noted that there is no language in the amendment which expressly relieves the landowner from paying the 15 per cent to cover delinquencies. It is quite obvious that one of the purposes, if not the sole purpose, sought to be accomplished by the amendment was to make it possible for landowners who desire and are able to relieve their lands from the lien of the bonds of the district to do so without waiting until the maturity of all of the bonds. It may not be assumed that the Legislature by the amendment intended to relieve the landowner from any of his obligations to the holders of the bonds. Viewed in the light of the purposes sought to be accomplished by the amendment, the expression, "land owner's proportion of the total issue of bonds," may well be said to mean the landowner's proportion of the liability for the payment of the total issue of bonds. Even though a landowner be required to pay the 15 per cent to cover delinquencies, the amount he is required to pay to relieve his land from further levy of bond fund taxes would

be based on the proportion of such landowner's allotment to the total final water allotment of the district.

We are thus of the opinion that the amendment of 1929 should be so construed that a landowner may relieve his lands from future bond fund taxes upon compliance with the following conditions, and not otherwise: By paying to the county treasurer his proportion of the total bond █ issue with interest to date of payment, together with an additional 15 per cent to cover delinquencies; that payment may be made in whole or in part with money, with bonds, and with interest coupons; that if bonds or coupons be used to make the whole or any part of such payment, the same shall be received at par; that to entitle a landowner to pay with bonds or coupons the same must either have reached maturity or will reach maturity within the year when payment is made. If there are two or more unpaid issues of bonds of the district outstanding, the landowner must pay his proportion of each issue. So construing the amendment of 1929, it is not unconstitutional.

The allegations of the petition filed herein show that the petitioner has failed to comply with the foregoing requirements. The demurrer to the petition should be, and accordingly is, sustained. The alternative writ of mandate heretofore issued is set aside and the petition dismissed. Costs to defendant.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.