### WALL et al. v. McNEE.

No. 8120.

Circuit Court of Appeals, Fifth Circuit.

Jan. 29, 1937.

Cary D. Landis, H. E. Carter, and James B. Watson, all of Tallahassee, Fla., for appellants.

D. C. Hull, Erskine W. Landis, and Francis P. Whitehair, all of De Land, Fla., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The decree appealed from adjudged unconstitutional as applied to the complainant-appellee Janet McNee, because impairing the obligation of her contract as a bond creditor of St. Lucie Inlet District and Port Authority, a statute of Florida enacted in 1933 (Acts Fla.1933, c. 16252), which made "bonds or matured interest coupons of all counties or other taxing districts receivable at par and in lieu of money in redemption of tax-sales certificates or other evidences of tax liens held in the name of the State * * * for all purposes other than the levy made for State taxes." Section 6. The act expressly requires the state's part of the taxes to be paid in cash, the payment in bonds and coupons being restricted to taxes due to a county or other taxing district, and that the bonds and coupons received be held uncanceled for adjustment of accounts between the county and taxing districts interested.

The taxing district here involved issued bonds in 1926 of which the complainant-appellee owns $43,000. The special statute authorizing them required the levy each year of a tax upon all the real and personal property of the district sufficient to pay interest on the bonds and to provide a sinking fund to pay the principal, the tax to be collected as other taxes are. Taxes were levied accordingly in

each year, but were largely uncollected, so that the sinking fund is insufficient to pay matured bonds and the interest is in default since 1931. At the filing of the bill tax-sale certificates amounting to $212,639 were outstanding against the property of the district for its uncollected taxes. The record shows that, since the collapse in 1926 of the Florida boom and the consequent reduction in property values, the taxes necessary to service large local bond issues have been such as to cause nearly half of the land of the state to pass under tax-sale certificates and thus off the tax-paying rolls. In the effort to absorb the defaulted obligations of the counties and lesser taxing districts and to redeem the certificated property and return it to the active tax rolls, the statute under attack and others have been passed. In 1929 an act (Acts Fla.1929, Ex.Sess., c. 14572) was made authorizing the sale of tax certificates, after the two-year period for redemption, for less than the taxes due. It was upheld as against a property owner in Ridgeway v. Peacock, 100 Fla. 1297, 131 So. 140. A 1931 act (Sp.Acts Fla. 1931, c. 15810) made a city's bonds and matured coupons receivable by it in lieu of money to pay current taxes. It was held unconstitutional as against holders of pre-existing bonds in Crummer v. City of Fort Pierce (D.C.) 2 F.Supp. 737, and the decision is cited approvingly by the Supreme Court of Florida in First State Savings Bank v. Little River Drainage District, 122 Fla. 304, 165 So. 48. In 1933 the act now in question was passed, which deals not with current taxes, but with those which, after an unsuccessful effort at sale of the property, have passed into the form of tax-sale certificates held by the state. Its validity was sustained as against taxpayers who objected that their taxes would be increased by allowing the defaulted taxes of others to be discharged in depreciated coupons, in State ex rel. Smith v. Butts, 111 Fla. 630, 149 So. 746, 89 A.L. R. 946. Notwithstanding the last-cited decision, which was thought not in point on a question of the rights of the holder of bonds made before the date of the act, a three-judge court held the act invalid as impairing the contract in this very case. McNee v. Wall (D.C.) 4 F.Supp. 496. The decision was reversed because the case was not one requiring three judges, 296 U.S. 547, 56 S.Ct. 177, 80 L.Ed. 388, but was cited and followed by the Supreme Court

of Florida in First State Savings Bank v. Little River Drainage District, supra.

The statutes regulating the collection of property taxes in Florida are fully stated in the above-cited cases. Such taxes, while not a personal charge against the property owner, are a lien upon the property assessed. When not paid, the property is offered publicly for sale and, if no one will bid the amount of the taxes charged against it, it is knocked off to the state and a sale certificate issued accordingly. The property may be redeemed by the owner within two years. If not then redeemed, the title vests in the state but may still be redeemed until otherwise disposed of. The cited cases make it plain that the state holds but as trustee for the taxing authorities concerned, and, when it receives money for the property, the money should go to discharge in due order their claims. The act here under examination recognizes this trust in providing that bonds and coupons received to redeem certificates held by the state shall be kept uncanceled until an account is had with the taxing districts involved. Prior to the recent acts, the taxes were payable only in money, and the taxpayer was not suffered to offset a debt held by him against the taxing authority but had to pay in cash and take his chances with other creditors in getting satisfaction of his debt. Finnegan v. City of Fernandina, 15 Fla. 379, 21 Am.Rep. 292. The law requiring the payment of taxes in money without offset and applying to the tax demand what is collected on redemption of tax-sale certificates entered into the bond contract of the St. Lucie Inlet District in 1926 and was part of its obligation, the impairment of which by the state is prohibited both by the Federal and State Constitutions. The taxes promised to be laid and collected constituted the security for the bonds and they stand much as property pledged to the debt would. Louisiana ex rel. Southern Bank v. Pilsbury, 105 U. S. 278, 288, 26 L.Ed. 1090; City of Clearwater v. State, 108 Fla. 623, 147 So. 459. These bondholders are by their contract entitled to have the bond taxes laid and paid according to the law in 1926, and if not paid to have a lien on the property assessed even after it has gone on tax-sale certificate into the hands of the state. Money paid in redemption of a tax sale is only a belated payment of the taxes. The Legislature has much discretionary power

over the financial affairs of taxing districts, and may decide what is for the best interests of them and their taxpayers and may change as against them the terms and conditions of redemption, as is held in State ex rel. Smith v. Butts, and Ridgeway v. Peacock, supra. See, also, State v. Lawler, 53 N.D. 278, 205 N.W. 880, and Ledegar v. Bockoven, 77 Okl. 58, 185 P. 1097. But, as against bondholders, the legislative power is limited, so that no change to the substantial detriment of the bond contract can be made without the bondholders' consent. It is argued that to reduce the outstanding debt and get the certificated property back on the tax-paying rolls, as the questioned act seeks to do, is for the benefit ultimately of those who are not at once paid. But detriment is the proximate result. In the first place there may be bonds of counties or other taxing districts used in payment which are in worse fix than the St. Lucie bonds and almost valueless. But, if St. Lucie bonds and coupons alone are offered, the taxpayers who own them get at once a hundred cents on the dollar for them while other owners of such get nothing. Bonds thus long in default are usually purchasable much below par, and taxpayers who would otherwise pay in cash will buy up bonds and coupons to pay their taxes with, and save the difference. The immediate result is that but little cash will be collected and persons who, like the complainant, owe no taxes, must wait indefinitely for payment or else sell their matured bonds and coupons at a discount on the taxpayers' market. Though by persistence they may eventually receive payment in full, there has clearly been a substantial alteration in their position to their detriment. Debts owing by political corporations of the state cannot without the creditors' consent be reduced or destroyed even under the bankruptcy power of Congress. Ashton v. Cameron County Imp. Dist., 298 U. S. 513, 56 S.Ct. 892, 80 L.Ed. 1309. Though many communities are so burdened by taxes that it might be the part of prudence in the bondholders to consent to relaxing arrangements, they may, if they insist, wring the fabric of taxation dry. This is grievous to taxpayers for the present, but it is the foundation of credit for future and perhaps wiser bond issues. Many other courts have held such legislative attempts at relaxation void as against antecedent bond contracts. Norfolk & Western Ry. Co. v. Boyle (D.C.) 12 F.

Supp. 522; In re Cranberry Creek Drainage District, 202 Wis. 64, 231 N.W. 588, 85 A.L.R. 242; State ex rel. Murphy v. Cherry, 188 Ark. 664, 67 S.W.(2d) 1024; Straus v. Ketchen, 54 Idaho, 56, 28 P.(2d) 824; Howard v. State, 226 Ala. 215, 146 So. 414; Shouse v. Quinley (Cal.Sup.) 37 P.(2d) 89. Though the assailed act may be valid generally, the court below rightly enjoined the further receipt under it of bonds and coupons in redemption of St. Lucie District tax sales.

Judgment affirmed.